

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-1998

# Johnson v. Horn

Precedential or Non-Precedential:

Docket 97-3581,97-3582

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Johnson v. Horn" (1998). *1998 Decisions.* Paper 174.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 28, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-3581, 97-3582

JEFFREY E. JOHNSON; BRUCE HOWARD SHORE,

        Appellants in No. 97-3581

v.

MARTIN F. HORN; RAYMOND J. SOBINA,

        Appellants in No. 97-3582

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 96-cv-00318J)

Argued: June 10, 1998

Before: BECKER, Chief Judge, ALDISERT and WEIS,
Circuit Judges

(Filed: July 28, 1998)

        Jon Pushinsky (argued)
        1808 Law & Finance Building
        Pittsburgh, PA 15219
         Attorney for Appellants/
        Cross-Appellees
        Jeffrey E. Johnson and
        Bruce Howard Shore

Sarah B. Vandenbraak,
 Chief Counsel (argued)
Jill Fluck, Assistant Counsel
Pennsylvania Department of
 Corrections
2520 Lisburn Road, P.O. Box 598
Camp Hill, PA 17001-0598
 Attorneys for Appellees/
 Cross-Appellants
 Martin F. Horn and
 Raymond J. Sobina

Isaac M. Jaroslawicz,
 Director of Legal Affairs
The Aleph Institute
9450 Collins Avenue
Surfside, FL 33154
 Attorney for Amicus Curiae
 The Aleph Institute

Burton Caine
Temple University School of Law
1719 North Broad Street
Philadelphia, PA 19122
 Attorney for Amicus Curiae
 American Civil Liberties Union of
 Pennsylvania

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This case once again presents the federal courts with the serious and difficult task of balancing an individual's First Amendment right to free exercise of religion with the principle, derived from the concepts of separation of powers and federalism inherent in our constitutional order, that federal courts should afford substantial deference to the administration of state correctional institutions. Specifically, we are asked to decide whether two Jewish inmates detained in the Pennsylvania prison system have a constitutional right to hot kosher meals provided to them at the Commonwealth's expense.

2

As inmates at the Pennsylvania State Correctional Institute in Somerset (the "Prison"), Appellants Jeffrey Johnson and Bruce Shore (the "Inmates") sued Appellees Raymond Sobina, the Prison Superintendent, and Martin Horn, the Commissioner of the Pennsylvania Department of Corrections (the "Prison Officials"), in federal district court. Johnson, a former inmate, and Shore, still an inmate, are members of the Jewish faith. They allege that the Prison Officials' denial to them of a daily kosher diet, including two hot kosher meals, violated several of their constitutional rights. The district court granted partial summary judgment to both sides and entered an injunction requiring the Prison Officials to provide Shore with a cold kosher diet at the Prison's expense. Both sides appeal from that order.

We have jurisdiction over that part of the district court's order granting summary judgment pursuant to 28 U.S.C. S 1291, and we will affirm the order in that respect. Because we decide that the district court's injunction is moot, we will vacate that part of the order granting prospective relief.

I.

In November 1996, Johnson and Shore were inmates at the Prison. Johnson was serving one to two years for attempted theft by deception and Shore was serving four to eight years for burglary.

Both Johnson and Shore are Jewish and consider themselves bound by the laws of kashrut, or kosher. According to the affidavit of Rabbi Dr. Baruch A. Poupko, the laws of kosher are "categorically binding upon every Jewish man and woman." JA at 64. Kosher laws dictate what foods can be eaten and how they can be prepared. Kosher food cannot be prepared in a non-kosher kitchen, but a sealed, frozen kosher meal can be stored in a conventional freezer and heated in a conventional or microwave oven.

A Department of Corrections policy provides that all inmates shall receive three meals a day, two of which are hot. Johnson, who previously had received kosher foods while in the federal prison system, arrived at the Prison in

May 1996. In June and July 1996, utilizing the Prison's grievance system, Johnson requested a kosher diet from Prison officials. The Prison's Grievance Coordinator denied his request, and Sobina affirmed this decision, stating: "Mr. Johnson has the ability to pick and choose items that are to his liking, whether it be for religious or personal diet reasons." JA at 39. If Sobina meant to suggest that Johnson's diet was a matter of personal choice, his response demonstrated a misunderstanding of the laws of kashrut. However, neither Johnson nor his Rabbi ever explained to Prison officials what a kosher diet entails. Johnson appealed Sobina's decision to the Central Office of the Pennsylvania Department of Corrections. Upon recommendation of the Central Office Review Committee, Commissioner Horn upheld the decision.

Shore arrived at the Prison in December 1995. In October and November 1996, Shore attempted for the first time to obtain kosher meals through the Prison's grievance procedures. As with Johnson, his request was denied.

In November 1996, Johnson and Shore filed suit against Horn and Sobina in federal district court, alleging that the denial of kosher meals violated the First Amendment, giving rise to a cause of action under 42 U.S.C. S 1983, and violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. SS 2000bb to 2000bb–4 (West 1997). The Supreme Court subsequently declared RFRA unconstitutional. City of Boerne v. Flores, 117 S. Ct. 2157, 2172 (1997) (RFRA exceeds Congress's Fourteenth Amendment enforcement powers). Johnson and Shore allege that after theyfiled suit, they were subject to a continuing pattern of retaliation and anti–semitic harassment from other inmates and prison guards.1 Complaints to Sobina about the alleged harassment were unavailing.

On November 13, 1996, the district court issued a temporary restraining order requiring the Prison Officials to provide Johnson and Shore with kosher food at every meal.
_____

1. The Inmates made these allegations in a March 1997 motion for emergency preliminary injunction. The record does not indicate that the district court ever ruled on this motion, and neither these allegations nor
the accompanying motion for injunctive relief are now before us.

The Prison subsequently provided Johnson and Shore with a kosher diet consisting of milk, unpeeled fruit, uncut raw vegetables and a vanilla-flavored liquid nutritional supplement called "Resource" (the "cold kosher diet"). The Prison charged the Inmates for the kosher food by deducting funds from their inmate accounts. In an affidavit submitted on the Inmates behalf, dietician Joanne Perelman stated that this diet "probably [provided] the proscribed [sic] number of calories and the required nutritional composition of vitamins and minerals." JA at 230. However, she felt the diet placed the Inmates "in a compromised dietary condition" because the liquid nutritional supplement provided "the bulk of their nutrition." Id. The magistrate judge recommended against this original cold kosher diet as a long-term solution, but endorsed it pending the final outcome of the litigation, with the understanding that the Prison would continue to provide the cold kosher diet to the Inmates. Based on this recommendation, the district court dissolved the temporary restraining order on December 24, 1996.

The cold kosher diet eventually was augmented to include granola, pretzels, cereal and saltines. Id. at 236. Prison dietician Brian Shedleski stated in his affidavit that he had performed an in-depth analysis of this diet using a computer model which considered the height, weight, age, gender and activity level of each Inmate, as well as the Recommend Dietary Allowance values set by the National Academy of Sciences. Based on this analysis, Shedleski concluded that "the diet is adequate and sufficiently meets the nutritional criteria set forth by the National Academy of Sciences." JA at 235.

Johnson was released from custody on August 9, 1997, at which time his claims for injunctive relief became moot. He remains a plaintiff only for the purpose of seeking damages.

At the close of discovery, the parties filed cross-motions for summary judgment. The Inmates argued that the cold kosher diet the Prison was providing them was constitutionally inadequate and that they, like other prisoners, were entitled to two hot, appetizing meals a day. Shore asked that the Prison be required to purchase frozen

5

kosher meals which could be heated for him twice a day in the Prison kitchen. The cost of purchasing frozen kosher meals is around $2.00 per meal, or approximately $4.00 per inmate per day.[2] On the other hand, the cold kosher diet costs the prison $7.24 per inmate per day. Id. at 316.

On August 29, 1997, the magistrate judge filed a report recommending that the district court grant partial summary judgment to both sides. Specifically, the magistrate judge recommended that, in order for the Prison Officials to comply with the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, the district court issue an injunction requiring the Prison Officials to (1) continue providing Shore the cold kosher diet and (2) refrain from charging Shore for kosher meals. The magistrate judge also determined that Johnson and Shore had no equal protection right to hot kosher meals, and recommended that the district court grant the Prison Officials qualified immunity from the Inmates' claims for money damages. On September 24, 1997, after the parties filed objections to the magistrate judge's report, the district court filed an opinion and order granting partial summary judgment to both sides and entering an injunction as recommended. Both sides appealed.

Oral argument was heard on June 10, 1998, at which time counsel for the Prison Officials made the following two concessions: (1) the Prison Officials are required to provide Shore with some form of kosher diet and (2) they may not charge him for it. These concessions have narrowed not only the scope of our review, but also the jurisdiction of the district court.

We have plenary review over the district court's decision to grant summary judgment. Sabo v. Metropolitan Life Ins.

_____

2. For the first time at oral argument, the Prison Officials asserted that the provision of kosher meals was actually more expensive than this because the Prison needed to buy an additional frozen meal for heat testing. This assertion is not supported by the record. The declaration of Prison Food Services Chief Marcia Noles does state that frozen kosher meals have to be heat tested, but her cost evaluation does not indicate that a separate meal must be purchased for this purpose. See JA at 83–84.

Co., 137 F.3d 185, 195 (3d Cir. 1998). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.; Rule 56(c), Federal Rules of Civil Procedure.

II.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting a free exercise thereof . . . ." U.S. Const. amend. I. In order to establish that the Prison Officials' denial of a hot kosher diet violates the Free Exercise Clause, the Inmates must show that the Prison Officials' decision contravenes their sincere religious beliefs, Africa v. Pennsylvania, 662 F.2d 1025, 1030 (3d Cir. 1981), and that it is not "reasonably related to legitimate penological interests," Cooper v. Tard, 855 F.2d 125, 129 (3d Cir. 1988).

The scope of our review has been narrowed by the Prison Officials' concessions at oral argument. Relevant to the First Amendment claim, the Prison Officials conceded that the Inmates are entitled to receive some kosher diet. In light of this concession, the Prison Officials' cross-appeal challenging the sincerity of the Inmates' religious beliefs is moot. The only issue, then, is whether the Free Exercise Clause requires the Prison Officials to provide the Inmates with hot kosher meals, as distinguished from the cold kosher diet.3 On this particular issue, the district court granted the Prison Officials partial summary judgment. We conclude that summary judgment was appropriate because the First Amendment requires only that the Prison Officials provide the Inmates with a kosher diet sufficient to sustain the Inmates in good health, and the Inmates have failed to create a genuine issue that the cold kosher diet compromises their health.

"[A] prison regulation impinging on inmates'
_____

3. The Prison Officials' total denial of any kosher diet prior to the establishment of the cold kosher diet is relevant to the Inmates' damages count, but summary judgment is appropriate on that count because the Prison Officials are entitled to qualified immunity. See infra part V.

7

constitutional rights is valid if reasonably related to legitimate penological interests." Cooper, 855 F.2d at 128. The Supreme Court has noted that this inquiry necessarily involves the balance of two competing principles: First, an individual does not surrender the protections which the Constitution provides him when he passes through the prison gate; and second, prison officials must be given substantial deference in the administration of their institutions. Turner v. Safley, 482 U.S. 78, 84 (1987). In light of these considerations, the Court has formulated a four-factor test for evaluating the validity of prison regulations, which we previously have summarized as follows: (1) whether there is a rational connection between the regulation and the penological interest asserted; (2) whether inmates have alternative means of exercising their rights; (3) what impact accommodation of the right will have on guards, other inmates and the allocation of Prison resources generally and (4) whether alternative methods for accommodation exist at de minimis cost to the penological interest asserted. Cooper, 855 F.2d at 129 (citing Turner, 482 U.S. 78, 89-90 (1987)).

The first Turner factor clearly favors the Prison Officials. The Prison has a legitimate penological interest in keeping its food service system as simple as possible. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir, 1993) ("The prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties."); see Kahey v. Jones, 836 F.2d 948, 950 (5th Cir. 1988). In addition, we believe Shore's request for hot kosher food creates legitimate security concerns, including bringing additional foods from new sources into the Prison and the possible belief by other Inmates that Johnson and Shore are receiving special treatment.

The second Turner factor--alternative means of observance--is neutral, favoring neither the Prison Officials or the Inmates. Insofar as that factor addresses the Inmates' general ability to exercise their faith, this interest weighs in the Prison Officials' favor because the Inmates are free to pray, meet with a Rabbi and have weekly religious services. See Cooper, 855 F.2d at 129. However, the importance of alternative means of religious observance

8

is an irrelevant consideration when the belief at issue is a "religious commandment," rather than a "positive expression of belief." Ward, 1 F.3d at 878 (discussing Jewish kosher laws). As the United States Court of Appeals for the Ninth Circuit has stated: "It is one thing to curtail various ways of expressing belief, for which alternative ways of expressing belief may be found. It is another thing to require a believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion." Id. As in Ward, the Inmates here are "defiling" themselves under the laws of kosher when forced to eat non-kosher foods. By acknowledging this, we do not intend to suggest that all "religious commandments" must be accommodated, whatever their costs to legitimate penological concerns. However, in such situations the centrality of the religious tenet carries greater weight and the existence of alternative means of observance is of no use in the ultimate balancing which Turner commands.

The third Turner factor--impact on guards, other inmates and Prison resources--is also neutral. The Prison Officials argue that providing Johnson and Shore with hot kosher meals will cause resentment among the other inmates, who will perceive Johnson and Shore as recipients of special treatment. At oral argument, counsel for the Prison Officials maintained that this concern would not exist if the Prison continues to provide only the cold kosher diet. We are not persuaded by this distinction. To the contrary, the record viewed in the light most favorable to the Inmates indicates that, subsequent to their requests for kosher foods and the provision of the cold kosher diet, both other inmates and Prison guards retaliated against and harassed them. We therefore believe that the preferential treatment problem, although legitimate, will exist no matter what kosher diet the Prison is required to serve to Shore.

Finally, the fourth Turner factor--the reasonableness of alternatives--ultimately favors the Prison Officials. To the extent this factor relates to financial considerations, it favors the Inmates. The Prison Officials assert cost as a legitimate penological justification for denying the Inmates' request, but providing the hot kosher meals would be

cheaper than providing the current kosher diet. The cost factor, which might suggest a certain arbitrariness on the part of prison officials could be given some weight were we free to apply the state regulation requiring "reasonable accommodations for dietary restrictions." 37 Pa. Code S 93.6. However, it is not our function to look to such sources in circumstances like those presented here. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 122-123 (1984). As Turner makes clear, we are to avoid "unnecessarily perpetuating the involvement of the federal courts in the affairs of prison administration." 482 U.S. at 89 (quoting Procunier v. Martinez, 416 U.S. 396, 407 (1974)). Moreover, a careful reading of Turner suggests that the fourth factor is most important when the desired action accommodates an inmate more fully than the challenged regulation. See Turner, 482 U.S. at 91 (regulation may not be reasonable if suggested alternative "fully accommodates the prisoner's rights at de minimis cost to valid penological interests"). If the cold kosher diet currently being provided satisfies kosher requirements, then the hot kosher diet which the Inmates suggest does not accommodate the Inmates any more "fully;" it merely accommodates them in a more palatable manner. Taste, however, is not a relevant constitutional consideration.

Balancing these factors, we hold that the First Amendment requires the Prison Officials to provide the Inmates with a diet sufficient to sustain them in good health without violating the kosher laws. See Ashelman v. Wawrzaszek, 111 F.3d 674, 678 (9th Cir. 1997); Kahane v. Carlson, 527 F.2d 492, 496 (2d Cir. 1975), re-aff'd under Turner test by Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir. 1992). In reaching this conclusion, we emphasize that each prison should receive substantial deference in formulating its particular plan for dietary accommodation. Here, the Prison is fully permitted to create the diet it believes best serves its legitimate penological interests as long as that diet (1) is kosher, and (2) sustains the Inmates in good health.

Applying the Turner reasonableness test to the case at bar, the cold kosher diet currently being provided passes constitutional muster because it is sufficient to keep the

10

Inmates in good health. This conclusion is supported by the affidavit of Prison dietician Brian Shedleski, who found the kosher diet to be nutritionally adequate after a detailed analysis of the diet as applied to each Inmate's individual characteristics. Once the Prison Officials put forth this evidence, in order to survive summary judgment the Inmates were required to "designate `specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Rule 56(e), Federal Rules of Civil Procedure). The Inmates made no such designation.

To rebut Shedleski, the Inmates presented the affidavit of dietician Joanne Perelman, who gave the opinion that the original kosher diet placed the Inmates in a "compromised dietary condition." JA at 230. However, Perelman did not consider the cold kosher diet after its augmentation, which added granola, pretzels, cereal and saltines. Rather, she concluded that the original kosher diet was unhealthy because it relied heavily on the use of the liquid supplement to provide essential nutrients. Perelman's failure to consider the complete kosher diet strips her affidavit of any real probative value. Moreover, we cannot credit Perelman's statement that, because the cold kosher diet includes the Resource liquid supplement, the Inmates should be "monitored medically on an ongoing basis for nutritional deficiencies." Id. at 231. Perelman's conclusion in this regard was based on the fact that medical monitoring is appropriate for individuals "placed on liquid diets for the purpose of weight control," id. at 230, which clearly is not the case here. For these reasons, Perelman's affidavit is insufficient to rebut Shedleski's thorough analysis. Therefore, there is no genuine issue that the cold kosher diet, in its current form, will sustain the Inmates in good health, and the district court properly granted the Prison Officials summary judgment on this issue.

III.

The Inmates' second theory is that the Prison Officials' failure to provide the hot kosher diet violates the Equal Protection Clause, U.S. Const. amend. XIV, S 1, because the

11

Prison provides a hot pork alternative to Muslims. 4 The district court granted summary judgment to the Prison Officials on this issue.

Initially, the Prison Officials argue that the Inmates waived their equal protection argument because they did not explicitly raise an equal protection claim in either their complaint or their summary judgment papers. We generally will not consider issues raised for the first time on appeal, Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994); however, the argument was raised sufficiently in the district court. See Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 388 (3d Cir. 1993). In Venuto, defendants in a malicious prosecution action argued that the plaintiffs waived their argument that being forced into bankruptcy was a "special grievance" supporting their claim. Even though the plaintiffs had not raised the issue, the district court considered it on the merits and ruled against them. We held that the issue was preserved for appeal because the plaintiffs could have sought leave to amend their complaint, the district court was put on notice, it decided the issue on the merits and the defendant was not prejudiced because both parties had briefed the issue fully on appeal. Id.

For similar reasons, the Inmates' equal protection claims are properly before us. Even though the Inmates did not raise this claim in their complaint or their motion for summary judgment, the magistrate judge's report discusses the equal protection claims. The subsequent objections to the report by the Inmates and the Prison Officials certainly put the district court on notice that equal protection was an issue. Indeed, the district court "considered the record in light of the Report and Recommendations and the objections thereto," Add. at 2, and adopted the report, with certain modifications, as its opinion. Id. at 6. In addition,

_____

4. The Inmates also had argued that the Equal Protection Clause prohibits the Prison Officials from charging them for a kosher diet, and the district court granted the Inmates summary judgment on this issue. The Prison Officials' cross-appeal challenges that portion of the district court's order. At oral argument, however, the Prison Officials conceded that they could not--and will not--charge Shore for kosher meals. Therefore, their appeal will be dismissed as moot.

12

the Inmates could have sought leave to amend their complaint, Rule 15(a), Federal Rules of Civil Procedure, but the magistrate judge's consideration of the equal protection issues probably made amendment seem unnecessary. Finally, because both parties have addressed the merits of the equal protection claim fully, the Prison Officials will not be prejudiced. Therefore, we can proceed to the merits of the equal protection claim.

The Inmates base their equal protection claim on the fact that, although to stay kosher they must eat cold foods and a liquid supplement only, the Prison accommodates Muslim inmates by providing hot alternatives on days when the Prison serves pork. "[I]n order to maintain an equal protection claim with any significance independent of [their] free exercise [claim] . . . [the Inmates] must also allege and prove that they received different treatment from other similarly situated individuals or groups." Brown v. Borough of Mahaffey, 35 F.3d 846, 850 (3d Cir. 1994). The Inmates' claim fails because they failed to create a genuine issue that they are similarly situated to Muslim inmates.

It is true that the Prison Officials provide an alternative to pork to all inmates when it appears on the menu. However, although Muslims are not allowed to eat pork, the Inmates have presented no evidence that this alternative, which is available to all inmates, is provided for the purpose of accommodating Muslims. Even assuming that the pork alternative is offered to accommodate Muslims, Muslim and Jewish inmates are not similarly situated. The Inmates have not pointed to evidence in the record as to what alternatives to pork appear on the Prison menu as an accommodation to Muslim inmates. Accordingly, there is no basis for comparing the non-pork diet with the cold kosher diet. Moreover, the pork substitutes are provided from items already in the Prison kitchen, but the proposed hot kosher diet would require the Prison to undertake the extra effort to obtain frozen meals from a new vendor and specially heat them in a conventional or microwave oven. Under these circumstances, Muslim and Jewish inmates are not similarly situated, because the accommodation of Jewish inmates would require substantially greater effort than the accommodation of Muslims inmates. See Dexter v.

13

Kirschner, 984 F.2d 979, 986 (9th Cir. 1992) (patients with same disease not similarly situated unless they can be treated with the same procedure); cf. Klinger v. Department of Corrections, 31 F.3d 727, 732–733 (8th Cir. 1994) (men and women at different prisons with different administrative and security concerns not similarly situated). Therefore, the Inmates' claim that the Equal Protection Clause requires the Prison Officials to provide hot kosher meals is without merit, and summary judgment on that issue was appropriate.

IV.

The Inmates argue for the first time on appeal that the cold kosher diet violates their right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Again, we generally will not consider issues raised for thefirst time on appeal. Harris, 35 F.3d at 845. The Inmates argue that they did not raise this issue in the district court because initially the magistrate judge only approved the cold kosher diet on an interim basis. The Eighth Amendment only became an issue, they argue, when the magistrate judge's second report recommended the diet's approval as a permanent solution. This argument is meritless.

First, insofar as the Inmates' complaint requests monetary relief, whether the cold kosher diet violated the Eighth Amendment was relevant even if the diet was only temporary. The Inmates could have raised their Eighth Amendment claim, like their equal protection claim, in their objections to the magistrate judge's second report. Alternatively, they could have amended their complaint to include a count for an Eighth Amendment violation. Unlike their equal protection claim, the Inmates did not raise their Eighth Amendment claim by either of these means, and the district court did not consider the Eighth Amendment in reaching its decision. We therefore decline to consider this issue.

V.

The Inmates argue that the district court erred by granting the Prison Officials qualified immunity from money

14

damages, holding that the law entitling Jewish inmates to a kosher diet under the First Amendment was not clearly established. We believe the district court properly granted immunity.5 Because summary judgment was appropriate on the Inmates' equal protection and Eighth Amendment claims, the question of whether the Prison Officials were entitled to qualified immunity on those claims is moot. The only question, then, is whether the Prison Officials are entitled to qualified immunity on the Inmates' First Amendment claims. We have held that the First Amendment does not entitle the Inmates to hot kosher meals, and the Prison Officials have conceded that they must provide some kosher diet. However, because the Prison Officials did not agree to provide even the cold kosher diet until November 1996, the Inmates have a colorable First Amendment claim against the Prison Officials based on their failure to provide the Inmates with any kosher diet prior to that time. The Inmates cannot receive damages from the Prison Officials for such a violation, however, if the Prison Officials are entitled to qualified immunity.

A public official is entitled to qualified immunity from monetary liability unless a "reasonable public official [in his or her position] would know that his or her specific conduct violated clearly established rights." Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996) (citing Anderson v. Creighton, 483 U.S. 635, 636–637 (1987)). This inquiry is divided into two separate issues. See Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997). First, we must determine whether the Prison Officials' conduct violated clearly established law; then--but only if we answer thefirst inquiry affirmatively--we must determine whether an objectively reasonable prison official would have realized the illegality of his conduct. See id. Employing this

_____

5. Initially, the Inmates argue that Horn waived his qualified immunity defense. However, in their answer to the Inmates' complaint, the Prison Officials allege that they are immune from suit. In addition the Inmates had the opportunity to present objections to the merits of the magistrate judge's recommendation that Horn receive qualified immunity, and the district court fully considered the merits of the immunity claims. The issue was preserved for appeal. See Venuto, 11 F.3d at 388.

15

analysis, we believe the district court correctly held that the Prison Officials are entitled to qualified immunity because the right of a prisoner to receive a kosher diet was not clearly established prior to November 1996.

The law was clearly established if "reasonable officials in the [Prison Officials'] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." See Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir. 1994) (in banc) (internal quotations omitted). The Inmates point to no decision of the Supreme Court or this Court, and we are aware of none, that clearly establishes their right to a kosher diet. This, however, may not end the inquiry, because the courts of appeals are divided as to whether, and to what extent, out-of-circuit decisions may be considered in determining whether the law was clearly established.6  We need not answer this difficult question, because we conclude that, under any standard, the law entitling the Inmates to a kosher diet was not clearly established when Horn and Sobina refused the Inmates' requests for kosher meals. Only two courts of appeals have recognized the right of a Jewish inmate to receive a kosher diet, Ward, 1 F.3d at 879

_____

6. The courts of appeals have taken three different approaches to this issue: (1) decisions from other courts of appeals may be considered, see Baptiste v. J.C. Penney Co., 1998 WL 348150, at *8 n.9 (10th Cir. June 30, 1998) (can rely on "clearly established weight of authority from other courts"); Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997); Norfleet ex rel.
Norfleet v. Arkansas Dep't of Human Servs., 989 F.2d 289, 291 (8th Cir. 1993). Cleveland-Perdue v. Brutsche, 881 F.2d 427, 431 (7th Cir. 1989); Lum v. Jensen, 876 F.2d 1385, 1387 (9th Cir. 1989), (2) such decisions may be considered only in exceptional circumstances, see Wilson v. Layne, 141 F.3d 111, 117 (4th Cir. 1998) (en banc) ("inappropriate as a general matter"); Cope v. Heltsley, 128 F.3d 452, 459 (6th Cir. 1997) (en banc) ("Although decisions of other courts can clearly establish the law, such decisions must both point unmistakenly to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.") (internal quotation omitted), and (3) such decisions never may be considered, see Jenkins ex rel. Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 & n.4 (11th Cir.), cert. denied sub nom. Jenkins ex rel. Hall v. Herring, 118 S. Ct. 412 (1997); Brady v. Fort Bend County, 58 F.3d 173, 175 (5th Cir. 1995).

16

(9th Cir.), Kahane, 527 F.2d at 496 (2d Cir.), and at least one of them does not view that right as a per se entitlement, Ward, 1 F.3d at 879 (remanding for consideration of whether prison's legitimate interests justified denial of kosher meals); cf. Kahey , 836 F.2d at 951 (prison not required to comply with Muslim inmate's particularized diet request). Therefore, the district court properly granted qualified immunity to the Prison Officials.7

VI.

In their cross-appeal, the Prison Officials argue that the district court entered prospective relief in Shore's favor in violation of the Prison Litigation Reform Act of 1996 ("PLRA"). Pub. L. No. 104-134, 1996 U.S.C.C.A.N. (110 Stat. 1321) 66-77 (codified in scattered sections of 11, 18, 28, and 42 U.S.C.). The PLRA, which took effect on April 26, 1996, 110 Stat. at 1321-1, reforms the federal courts' adjudicatory powers over prisoner-initiated civil litigation. Among its many provisions, the PLRA limits the power of district courts to grant prospective relief:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

_____

7. Because the law was not clearly established, we need not decide whether an objectively reasonable prison official in Horn's and Sobina's positions would have believed his conduct violated the Inmates' First Amendment right to a kosher diet. In particular, we express no opinion as to the reasonableness of Sobina's misunderstanding of kosher law.

In addition, we need not reach Horn's argument that summary judgment was appropriate because he was not "personally involve[d]" in the decision to deny the Inmates a hot kosher diet. See Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) ("personal involvement" giving rise to S 1983 liability requires "personal direction or . . . actual
knowledge and acquiescence").

17

> The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. S 3626(a)(1)(A).

The Prison Officials argue that the district court ordered them to continue providing Shore with the cold kosher diet and to refrain from charging him for it without making findings required by S 3626(a). This argument presents several important PLRA interpretive issues, for example: (1) what, if any, specific findings does the PLRA require a district court to make before granting prospective relief? and (2) must a party challenging the district court's entry of prospective relief make a motion to terminate that relief-- pursuant to S 3626(b)8-- in the district court before taking an appeal to this Court? We must leave these questions to another day, however, because the concessions made by the Prison Officials at oral argument render these issues moot.

The Constitution limits the power of the federal judiciary to the resolution of "cases and controversies." See U.S. Const. art. III, S 2, cl. 1; Whitmore v. Arkansas, 495 U.S. 149, 154-155 (1990). Mootness "ousts the jurisdiction of the federal courts and requires dismissal of the case." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 335

_____

8. Section 3626(b) provides:

> (2) Immediate termination of prospective relief.--In any civil action
> with respect to prison conditions, a defendant or intervener shall be
> entitled to the immediate termination of any prospective relief if the
> relief was approved or granted in the absence of afinding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

> (3) Limitation.--Prospective relief shall not terminate if the court
> makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

(1980). The Supreme Court recently clarified that this fundamental principle prohibits federal courts from deciding on the merits any case over which they lack subject matter jurisdiction. See Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1012 (1998) (specifically disapproving the practice of assuming jurisdiction and proceeding to the merits). Absent exceptional circumstances not present here,9 where a defendant agrees to afford all the prospective relief a plaintiff is requesting, mootness doctrine bars a federal court from deciding the merits of the issue. Philadelphia Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia, 874 F.2d 156, 161 (3d Cir. 1989) ("Full compliance with an injunction amounting to the entirety of the relief sought renders an issue moot."); see 13A Charles Alan Wright et al., Federal Practice and Procedure S 3533.2, at 238-239.

The district court entered an injunction requiring the Prison Officials to provide Shore the cold kosher diet and to refrain from charging him for it. At oral argument, however, the Prison Officials conceded that (1) Shore was entitled to a kosher diet and (2) they were not permitted to charge him for it. By complying with these concessions, as they have been since November 1996, the Prison Officials are providing Shore with all the relief to which he constitutionally is entitled. Under these circumstances, there is no live "case or controversy" regarding prospective relief before us, and Article III ousts both us and the district court of jurisdiction to consider the merits of this issue. Accordingly, that part of the district court's order enjoining the Prison Officials to provide Shore with a cold

_____

9. The Supreme Court has crafted a well-established exception to the mootness rule: Mootness will not prevent jurisdiction where the conduct in question is "capable of repetition, yet evading review." Spencer v. Kemna, 118 S. Ct. 978, 988 (1998). This doctrine applies only where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there[is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam). The actions of the Prison Officials do not satisfy either of these
conditions.

kosher diet and to refrain from charging him for it will be vacated as moot.

VII.

We have not reached today's decision without sympathy for the plight of Mr. Shore and Mr. Johnson. The diet which the Prison has chosen to afford them is one which, perhaps, few would select as a matter of personal choice. Nonetheless, we must take proper heed of the federal courts' role in prison oversight. On this point, we turn again to the words of the Supreme Court:

> [T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

Turner, 482 U.S. at 84–85. In light of this admonition and the enactment of the PLRA, we are left wondering why the Inmates did not bring their claim in state court, where they would be entitled to the full protection of the Pennsylvania Constitution and enforcement of Department of Corrections regulations, without the strictures imposed by the PLRA. Notwithstanding the concerns expressed by the Inmates' counsel at oral argument, we have full confidence that the Pennsylvania judiciary will enforce the civil rights of prison inmates to the full extent permitted by the law.

We have considered all the parties' arguments and conclude that no further discussion is necessary. That part of the district court's order granting partial summary judgment to both parties and granting Horn and Sobina qualified immunity will be affirmed. That part of the district

20

court's order enjoining Horn and Sobina to provide Shore a kosher diet at no cost will be vacated as moot.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

21