Elijah MUHAMMAD

v.

Richard KLOTZ, et al.

Civil Action No. 97–1552.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 1999.

Catherine M. Roseberry, Gavin P. Holihan, Allentown, PA, for defendants.

Elijah Muhammad pro se.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In this § 1983 action, plaintiff Elijah Muhammad, a *pro se* prisoner, seeks damages and injunctive relief from defendants Richard Klotz, director, Edward Sweeney, warden, and Samuel Claudio, chaplain, of the Lehigh County Prison. Plaintiff claims that defendants' actions during Ramadan which began February 1, 1995 and concluded March 3, 1995 while plaintiff was being detained at Lehigh County Prison, violated his right to free exercise under the First and Fourteenth Amendments and the Religious Freedom Restoration Act (RFRA). The defendants move for summary judgment. Their motion will be granted.

## I. Facts [1]

Lehigh County Prison is a maximum security facility. (Sweeney aff. ¶ 15). As a county facility, it holds both pretrial detainees and sentenced inmates for crimes ranging from misdemeanors to felonies to capital homicide. In addition to these state criminal offenders, it holds federal inmates, those detained by the INS, and civil contempt offenders. Its multiple housing units are segregated according to the severity of the crime and the security risk presented by the inmate. (Sweeney aff. ¶ 16).

While incarcerated, inmates can engage in group activities. Each day, the six activity areas are for more than twelve hours apiece. (Sweeney aff. ¶¶ 9–11, Defs. exh. A, at Sweeney 8). Supervision of the inmates during these group activities presents security concerns. (Sweeney aff. ¶ 13). Due to the large number of activities, prison staff cannot supervise each one. (Sweeney aff. ¶ 12). To enable more activities, Lehigh County Prison adopted a policy of using approved outside community volunteers to supervise group activities. (Sweeney aff. ¶ 13). In addition, a March 21, 1995 memo further clarified the procedure for those activities that do not require the presence of either prison staff or an outside volunteer.[2] (Pl. response to defs. motion for summary judgment, exh. 1).

On December 28, 1994, the Islamic Community of Lehigh County Prison, of which Muhammad was a member, sent a memo to Warden Sweeney. (Complaint, opening ¶). The group sought accommodations for the religious needs of Muslims incarcerated at Lehigh County Prison during Ramadan. It listed the seven necessary requirements to proper Ramadan observance. (Pl. statement to show cause, exh. 1). The requirements focus on congregational worship and fasting.[3]

On January 25, 1995, Warden Sweeney distributed a memo to prison personnel regarding the observance of Ramadan. (Defs. exh. A, at Sweeney 1). According to the memo, Lehigh County Prison would provide the Muslim inmates with a predawn meal in their cells and an evening meal after sunset in the day room. In addition, all daily Ramadan prayers and rituals were to be conducted by the inmates alone in their cells, though the regular, weekly Talim and Jumah services would continue as a group activity. The memo established prerequisites for in-

---

1. The facts are taken from the parties' submissions and are either uncontested or stated most favorably to the plaintiff.

2. The memo covered the rules concerning the locking and unlocking of activity area doors.

3. The requirements stated in the memo are: Saum (fasting during daylight hours); Sahur (the predawn meal); Fard Salatul al Jumman (congregational prayer five times a day); Iqra al Qur'an ul Jumman (congregational Qur'an recitation once a day); Iftar ul Jumman (congregational fast breaking, including the sunset prayer); Salatul Eid (congregational prayer the morning after the fasting period concludes); and Eidul al Fitra (congregational meal occurring within three days of Salatul Eid).

mate attendance at Eidul al Fitra. Finally, a list of the inmates observing Ramadan was to be maintained by Chaplain Claudio.

On January 26, 1995, Chaplain Claudio issued a memo on Ramadan observance to the inmate population. (Pl. statement to show cause, exh. 2). It required that any inmate seeking to participate in Ramadan observance submit a request to him. His list allowed participating inmates to comply with the fasting requirement by removing them from the regular meal schedule. (*id.*). The number of inmates participating in Ramadan ranged from sixteen to twenty-seven. (Defs. exh. A, at Sweeney 3, Sweeney 4, Sweeney 5). These participants came from ten different housing units in the prison. (*id.*). On January 31, 1995, the Islamic Community of Lehigh County Prison sent a memo to Chaplain Claudio indicating that his memo was insufficient because it only provided for fasting and neglected the more important congregational worship. (Pl. statement to show cause, exh. 3).

Throughout this period, Muhammad talked with both Warden Sweeney and Chaplain Claudio regarding what he considered to be the insufficient opportunity provided Islamic inmates to observe Ramadan. (Complaint, ¶¶ 2, 4, 8, 10). In addition, Kamal M. El–Shaarawy, the Outside Volunteer Coordinator for the Islamic Community at Lehigh County Prison, spoke with both Warden Sweeney and Chaplain Claudio about Ramadan. (Complaint, ¶ 7, Sweeney aff. ¶ 7).

In early February, Mr. El–Shaarawy and Warden Sweeney discussed the issue of congregational evening prayer. According to Warden Sweeney, on February 7, 1995 he told Mr. El–Shaarawy that congregational evening prayer would only be allowed if an approved volunteer attended because the sole program areas available were those where inmates were not permitted to congregate without staff or volunteer supervision. (Defs. exh. A, at Sweeney 6).

On February 10, 1995, Mr. El–Shaarawy informed Warden Sweeney that he might be able to locate a volunteer to attend congregational evening prayer. Later that day, Assistant Warden Dale Meisel issued a memo regarding those services. (Defs. exh. A, at Sweeney 6). A room for congregational prayer would be provided from 7 p.m. until 8 p.m. daily. Under this arrangement, however, the service would only be held if an outside volunteer was present. Volunteers had been approved by the prison authorities for this purpose. (Sweeney aff. ¶¶ 7 G, I).

In addition to Mr. El–Shaarawy, Dr. Mohamed Eid, Chairman of the Muslim Association of Lehigh Valley, was involved in the effort to resolve the issue of congregational evening prayer. On February 21, 1995, he sent a letter to Warden Sweeney on Ramadan observance. (Pl. statement to show cause, exh. 4). Warden Sweeney's response reiterated his position on the need for an outside volunteer at the group prayer. (Defs. exh. A, at Sweeney 6).

Ramadan observance followed the procedures outlined in Warden Sweeney's January 25, 1995 memo, concluding with Eidul al Fitra on March 3, 1995. (Sweeney aff. ¶ 7, pl. dep. at 17, 18, 20, 25, 26, 28, 29). Precisely two years later, Muhammad filed this lawsuit alleging violations of his free exercise rights.

## II. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. When the moving party does not bear the burden of persuasion at trial, as here, its burden "may be discharged by 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings," *id.*, but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

To determine whether summary judgment is appropriate, the court must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW,* 974 F.2d at 1363. Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505. Once this process has taken place and the court determines that there are no triable issues of fact, the court proceeds to decide whether the law and the facts a claim has been stated. I conclude that there are no facts to be tried and, considering the facts on the record, that plaintiff fails to prevail as a matter of law.

### III. 42 U.S.C. § 1983

In order to bring a successful § 1983 claim, a plaintiff must demonstrate (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir.1994); *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir.1993). Muhammad brings his § 1983 claims against all defendants on the basis of violations of RFRA and the free exercise clause of the First Amendment.

### A. Religious Freedom Restoration Act

Muhammad alleges that the defendants violated his rights under RFRA, 42 U.S.C. § 2000bb. However, in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held RFRA unconstitutional because Congress exceeded its enforcement power granted under Section 5 of the Fourteenth Amendment when enacting RFRA. Therefore, Muhammad's RFRA claims must be dismissed.

### B. Free Exercise

Muhammad alleges that the defendants infringed his free exercise rights and seeks "declaratory, injunctive, compensatory, and punitive damages" for this violation. Muhammad has been incarcerated at SCI, Coal Township since October 27, 1995. Complaint, ¶ 13. He does not allege that he will be returned to Lehigh County Prison. Thus, neither declaratory nor injunctive relief is available. *See Maldonado v. Houstoun,* 157 F.3d 179, 184 (3d Cir.1998) (injunction); *Versarge v. Township of Clinton,* 984 F.2d 1359, 1369 (3d Cir.1993) (declaratory judgment). Muhammad has not alleged any facts implicating Richard Klotz in the alleged constitutional violations. Therefore, the claims

against this defendant will be dismissed.[4] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The remaining individual defendants, Warden Sweeney and Chaplain Claudio, assert that qualified immunity shields them from liability on the free exercise claim. "As government officials engaged in discretionary functions, [d]efendants are qualifiedly immune from suits brought against them for damages under section 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Sherwood v. Mulvihill,* 113 F.3d 396, 398–99 (3d Cir.1997) (*quoting Harlow v. Fitzgerald,*) 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, *Harlow* provides the court with an objective standard against which to measure the official's actions. When applying this objective standard, the court must first decide whether the plaintiff has stated a violation of a constitutional or federal statutory right. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). If the plaintiff has stated a violation, the court must clarify whether that right was clearly established at the time of the violation, i.e., were the "contours of the right ... sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right?" *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the defendants have asserted a qualified immunity defense in a motion for summary judgment, Muhammad must show that the defendants' conduct violated some clearly established statutory or constitutional right. *Sherwood,* 113 F.3d at 399.

Prisoners[5] do not forfeit their first amendment protections by reason of their incarceration. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The fact of incarceration and valid penological objectives, however, require and justify limitations on numerous privi-

leges and rights. *Id.* "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone,* 482 U.S. at 349, 107 S.Ct. 2400 (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Thus a prisoner's right to first amendment protection is circumscribed by legitimate needs of the penal institution. The unrebutted evidence submitted by the defendants indicates that the plaintiff has failed to state a violation of the circumscribed right.

Muhammad asserts that his free exercise rights were violated because he could not engage in congregational prayer during Ramadan. The impeded Ramadan sacraments were Fard Salatul al Jumman, Iqra al Qur'an ul Jumman, and Iftar ul Jumman. Instead of these services, the Muslim inmates had the opportunity to engage in one supervised congregational evening prayer.

The limitations on the first amendment rights of inmates are outlined in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). As summarized by the Third Circuit in *Johnson v. Horn,* 150 F.3d 276, 282 (3d Cir.1998), the factors that impact on the limitations are: (1) whether there is a rational connection between the regulation and the penological interest asserted; (2) whether inmates have alternative means of exercising their rights; (3) what impact accommodation of the right will have on guards, other inmates and the allocation of prison resources generally and (4) whether alternative methods for accommodation exist at de minimis cost to the penological interest asserted.

The first *Turner* factor considers the relationship between the regulation and the penological interest. The Ramadan participants came from ten different housing units. Each separate housing unit contains prisoners with a different level of security risk.

4. In September, 1997, plaintiff filed an amended complaint without court authorization. It is identical to the original complaint in all respects except that it adds "Lehigh County department of Corrections" as a defendant. As Muhammad has not alleged any facts implicating this defendant, the claims against the Lehigh County De-

partment of Corrections would also have been dismissed.

5. Muhammad's status as a pretrial detainee does not alter the analysis. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

For these reasons, group activities involving the Ramadan participants raise internal order and security concerns.

The second *Turner* factor considers whether alternative means of exercising the right exist. As the right to free exercise must be construed "sensibly and expansively," *Thornburgh v. Abbott*, 490 U.S. 401, 417, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), it must be determined whether Muhammad retains "the ability to participate in other Muslim religious ceremonies." *O'Lone*, 482 U.S. at 352, 107 S.Ct. 2400. Muhammad had other avenues of religious expression available. He was able to fast during the daylight hours because the defendants made meals available at alternative times. He was able to attend the Eidul al Fitra festival meal at the conclusion of Ramadan. Furthermore, the weekly Talim and Jumah services, which feature congregational prayer, were continued during Ramadan. *Cf. O'Lone*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (upholding regulation preventing Jumah attendance). Finally, nothing impeded Muhammad's individual prayer. *Cf. Cooper v. Tard*, 855 F.2d 125 (3d Cir.1988) (noting Islamic acceptance of individual prayer). Therefore, Muhammad had alternative means of exercising his right to free exercise.

The third *Turner* factor measures the impact of accommodation on the resources available in the prison. Every day, numerous group activities occurred in Lehigh County Prison. The large number of activities made it impossible for prison staff to oversee every activity requiring supervision. In an attempt to solve this problem, the prison administration developed a policy of outside community volunteers. In particular, space was made available for congregational Ramadan prayers if an approved community volunteer attended. It is uncontested that volunteers had been approved.

The fourth *Turner* factor examines the availability of ready alternatives to the regulation. Keeping in mind that courts must defer to the judgment of prison officials on "difficult and sensitive matters of institutional administration," *O'Lone*, 482 U.S. at 353, 107 S.Ct. 2400 (citing *Block v. Rutherford*, 468 U.S. 576, 588, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)), and noting that Muhammad has presented no alternatives, there are a number of apparent options. As previously discussed, the limited resources in Lehigh County Prison eliminated the potential for prison staff supervision of all inmate group activities. At the other extreme, canceling all group functions is not a viable option. As a middle ground, unsupervised group activity could occur more broadly. This choice, however, would increase security risks at the prison. *See, e.g., O'Lone*, 482 U.S. at 353, 107 S.Ct. 2400 (noting special dangers posed by affinity groups).

This analysis reveals that no material facts remain in issue with respect to Muhammad's first amendment rights. Muhammad has failed to state a claim involving his right to free exercise of religion. Therefore, in accordance with *Siegert*, Muhammad cannot overcome defendants' qualified immunity defense. Summary judgment will be entered in favor of the defendants on the plaintiff's free exercise claim.

**AND NOW**, this 27th day of January, 1999, **IT IS ORDERED THAT** defendants' motion for summary judgment is **GRANTED** (docket # 33). Judgment is entered in favor of all defendants.