NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3059
_____

SEAN TAPP,

Appellant

v.

ANDY PROTO; GILBERTO CRESPO; NICOLE GOLBACH;
BRENDA WILLIAMS; JOEL ALVAREZ; INEZ CALENE;
ALAN HUBER; ROMANOWSKI, Mr.; GUARDREENI, Mr.;
ROBERT SAMASKO; KLOWONSKY, Mr.; R. WOLFFE, Sgt.;
MASTERANGELO, C.O.; BROWN, C.O.; MCCORMICK, C.O.;
OWENS, C.O.; MINOTTI, C.O.; ZIMMERMAN, C.O.; BRENDOL, C.O.;
BOOTH, C.O.; R. YEINGST, C.O.; TRUDELL, Sgt.;
LEFEVRE, Sgt.; COCO, C.O.; BARLEY, C.O.;
DOUGH, Dr.; NURSE RACHEL; NURSE HENNLY;
DEFORD, C.O., Lancaster County Prison Officials
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 07-3725)
District Judge: Honorable Anita B. Brody
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 2, 2010

Before: AMBRO, CHAGARES and NYGAARD, Circuit Judges

(Opinion filed December 13, 2010)
_____

OPINION
_____

PER CURIAM

Appellant Sean Tapp brought this pro se 42 U.S.C. § 1983 action challenging numerous aspects of his confinement at Lancaster County Prison. The District Court granted summary judgment to all defendants and denied Tapp's cross-motion for summary judgment, and Tapp appealed.[1] We have jurisdiction under 28 U.S.C. § 1291 and review the order granting summary judgment under a plenary standard of review. State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). Because this appeal presents no substantial question, we will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.      Free Exercise of Religion

Tapp first claims that the defendants violated his First Amendment right to the free exercise of religion by failing to provide him with acceptable Kosher meals. The undisputed evidence reveals, however, that the prison began to serve Kosher meals to Tapp less than two weeks after he first requested them. Given that a prison is entitled to assess whether an inmate's dietary requirements are motivated by "sincerely held" religious beliefs, DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000), we conclude that the prison's short delay in honoring Tapp's request did not impinge on his free exercise rights.

Tapp also complains that the Kosher meals the prison served him lacked variety and were often cold. We have previously held that a prison does not violate the Free

---

[1] Tapp named 29 defendants in his complaint. In the interest of brevity and because we conclude that his claims fail against all defendants, we will treat the

2

Exercise Clause by offering an all-cold Kosher diet, see Johnson v. Horn, 150 F.3d 276, 283 (3d Cir. 1998), overruled on other grounds by DeHart, 227 F.3d at 55, and similarly perceive no constitutional violation here. Moreover, to the extent that Tapp alleges the existence of other intermittent problems with food preparation, those issues impose only a de minimis burden on his religion and thus do not violate the Free Exercise Clause. See Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999). Accordingly, we agree with the District Court that Tapp's free-exercise claims lack merit.

II.     Right of Access to the Courts

Tapp next argues that prison officials denied his right of access to the courts by refusing to notarize his documents or allow him to use the law library. To prevail on such a claim, Tapp must show that the denial of access caused actual injury; for instance, that he was prevented from asserting a "nonfrivolous" and "arguable" claim. Christopher v. Harbury, 536 U.S. 403, 415 (2002). As the District Court explained, Tapp failed on summary judgment to show any such injury. While Tapp claimed at his deposition that due to the prison officials' obstruction he was unable to institute a habeas action in the Southern District of New York, that court's docket reveals that Tapp filed a habeas petition before he entered Lancaster County Prison. Moreover, contrary to the broad allegations in Tapp's complaint, the documentary evidence shows that Tapp was in fact provided with notary services and permitted to use the library on a regular basis throughout his incarceration — and that he prosecuted at least three civil cases during this period. See Wilson v. Prasse, 404 F.2d 1380, 1381 (3d Cir. 1968) ("[T]he many civil

defendants collectively throughout this opinion.

actions instituted by appellant in the federal and state courts supported the conclusion of the District Court that the contention that appellant had been denied access to the court was frivolous.").

Nor did the alleged flaws in the prison's grievance system violate Tapp's right of access to the courts. The District Court correctly noted both that an inmate has no constitutional right to a grievance procedure and that the existence of the instant case belies any notion that Tapp could not access the courts. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996).

III.     Conditions of Confinement

Tapp presents an array of claims concerning the conditions of his confinement. Two different legal standards are applicable:  Tapp's claims that arose while he was a pretrial detainee (from when he entered the prison until he was sentenced on September 17, 2007) must be prosecuted under the Due Process Clause of the Fourteenth Amendment, while his claims that arose after he was sentenced are analyzed under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005). In lieu of attempting to glean from Tapp's unclear allegations precisely which period of his confinement his claims concern, we will analyze all of his claims under the Due Process Clause, because his due process rights are at least as broad, if not broader, than his rights under the Eighth Amendment. See Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).

Tapp first argues that his rights were violated when he was forced to share a cell with two other inmates. The Supreme Court has recognized that "confining a given

4

number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause." Bell v. Wolfish, 441 U.S. 520, 542 (1979). Here, Tapp's cell was 95 square feet in size and, according to the deputy warden at Lancaster, was actually designed to house three people. Moreover, Tapp was held in this cell for only four to six weeks, and during this time he was provided with an elevated "boat bunk" with a mattress. These conditions do not amount to the type of hardship that violates the Due Process Clause. See Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008).

Tapp also argues that his rights were violated because two days each week he was denied access to the exercise and shower facilities. Other courts have held that similar conditions do not violate the Eighth Amendment, see, e.g., Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (exercise); Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988) (shower), and given that Tapp has presented no evidence that this schedule somehow amounts to punishment, we conclude that his claim likewise fails under the Due Process Clause.

We reach the same conclusion as to Tapp's complaints that he was given clothes that had previously been worn by other inmates, that the prison temperatures were too high, and that he was forced to room for a night with an unruly "dope fiend." While prison officials must ensure that prisoners receive adequate clothes, are held in cells that are sufficiently ventilated, and are protected from being harmed by other prisoners, see generally Farmer v. Brennan, 511 U.S. 825, 832 (1994); Keenan v. Hall, 83 F.3d 1083,

5

1091 (9th Cir. 1996), we conclude that Tapp has presented no evidence that the conditions he experienced amounted to the type of genuine privation that qualifies as "punishment." See Bell, 441 U.S. at 537 ("the fact that such detention interferes with a detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment'").

Finally, Tapp contends that he received inadequate medical care because the prison's medical staff failed properly to document his weight. Contrary to Tapp's argument, the evidence shows that upon learning that Tapp had lost weight, the staff weighed him repeatedly, took blood tests, and arranged for him to receive a nightly snack. Ultimately, the medical records report, his weight was stabilized. Accordingly, we conclude that the District Court was correct to grant summary judgment to the defendants on this claim.[2]

IV.     Remaining Claims

Tapp's remaining claims will be addressed here seriatim. Tapp complains that prison officials wrongfully appropriated a photograph of his girlfriend. However, deprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Adequate remedies were available here: Tapp could have

---

[2] Tapp also claims that he was given an inadequate diet and that the drinking water he received came from a tank that mixed drinking and sewage water. However, he has presented no evidence in support of these claims beyond his mere speculation, while the prison officials have presented documentary evidence that contradicts these claims. Accordingly, the District Court properly granted summary judgment to the prison officials.

6

filed a state tort action, see id. at 535, or used the prison's grievance process, see Tillman v. Lebanon County Corr., 221 F.3d 410, 422 (3d Cir. 2000).

Tapp contends that he was the victim of numerous, multi-faceted conspiracies. These claims must fail because all that Tapp has presented are "ambiguous allegations and vague inferences," which, this Court has explained, "cannot defeat summary judgment." Ridgewood Bd. of Educ. v. N.E. ex rel M.E., 172 F.3d 238, 254 (3d Cir. 1999). Tapp's allegations of racial discrimination similarly lack merit because they are based on only his unsupported conclusion that the defendants acted against him on the basis of his race. See Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 197 (3d Cir. 2009).

Finally, Tapp avers that prison officials violated his due process rights because they held a disciplinary hearing in which he was not permitted to call witnesses or produce documentary evidence. See Surprenant v. Rivas, 424 F.3d 5, 17 (1st Cir. 2005) (discussing rights of pretrial detainees). However, by Tapp's own testimony, he intentionally violated prison rules for the very purpose of being placed in segregation so that he would no longer have to room with his then-cellmate. In these unusual circumstances, it is unclear what documentary evidence he would have introduced — he has not identified any — and it was permissible for the officials to determine that witnesses were unnecessary. See Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002). For these same reasons, we perceive no way in which these restrictions could have

7

resulted in prejudice. <u>See</u> <u>Piggie v. Cotton</u>, 344 F.3d 674, 678 (7th Cir. 2003).[3]

We have thoroughly reviewed the remaining allegations Tapp has made and find them meritless. Accordingly, we conclude that there is no substantial question presented by this appeal, and will thus summarily affirm the District Court's orders granting summary judgment to all defendants and denying summary judgment to Tapp. <u>See</u> 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

---

[3] For the reasons discussed in this opinion, we conclude that the District Court also correctly denied Tapp's cross-motion for summary judgment and his request for injunctive relief. We likewise affirm the District Court's order denying Tapp's motion for reconsideration. While Tapp argued that he was deprived of his legal papers, the documentary evidence and Tapp's own statements in his filings and deposition refute this contention.