Tracy Lynn MASON, Plaintiff and Next Friend of Samantha L. Mason, a Minor Child, and Andrew Whitlock, a Minor Child, Plaintiffs,

v.

Stacy BARKER, Individually and His Official Capacity as Chief of Police for the City of McCrory, Arkansas, and James Fred Harrison, Individually and in His Official Capacity as a Police Officer for the City of McCrory, Arkansas, Defendants.

No. H–C–97–61.

United States District Court,
E.D. Arkansas,
Eastern Division.

Sept. 18, 1997.

Robert A. Newcomb, Little Rock, AR, for plaintiffs.

Jeannette Denham, North Little Rock, AR, for defendants.

*ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS AND GRANTING MOTION TO FILE AMENDED COMPLAINT*

EISELE, District Judge.

Before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion to File Amended Complaint. The Court has reviewed the submissions of the parties and, for the reasons set forth in this Order, will deny in part and grant in part Defendants' Motion to Dismiss and will grant Plaintiffs' Motion to File Amended Complaint.

## I. Background

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate only if it is beyond a reasonable doubt that Plaintiffs could prove no set of facts which would entitle them to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Whisman v. Rinehart*, 119 F.3d 1303, (8th Cir.1997). Thus, the Court will construe Plaintiffs' Complaint liberally and will assume that all factual allegations are true. *See Whisman*, 119 F.3d at 1308.

On August 9, 1994, Plaintiff Tracy Mason went to Bald Knob to see her doctor. Defendant James Fred Harrison, Ms. Mason's boyfriend and a police officer in McCrory, accompanied her. Ms. Mason's doctor prescribed her Atavan, an anti-anxiety drug, and gave her samples of Paxli, an anti-depressant. Ms. Mason had the prescription for Atavan filled at Winningham Drug Store in Bradford.

Ms. Mason and Mr. Harrison picked up Ms. Mason's children, Plaintiffs Samantha L. Mason and Andrew Whitlock, and went to Mr. Harrison's residence in McCrory. There, Mr. Harrison told Ms. Mason that he was breaking off their relationship, and, in Mr. Harrison's presence, Ms. Mason took fifteen Atavan.

Mr. Harrison reported a domestic dispute to the McCrory Police Department. Defendant Stacy Barker, McCrory's Chief of Police, came to Mr. Harrison's residence and took Ms. Mason into custody. Defendants knew or should have known that Ms. Mason was intoxicated by the Atavan she took, yet they ordered her and her children into a vehicle and told her to drive out of town.

"[I]n a black-out state," Ms. Mason left McCrory and drove west on U.S. Highway 64. Complaint at ¶ 15. She was involved in an accident while crossing the White River Bridge at Augusta.

Purporting to state claims under 42 U.S.C. § 1983 for deprivation of constitutional rights, Plaintiffs filed the instant lawsuit on June 30, 1997, against Mr. Barker and Mr. Harrison in their individual and official capacities. Plaintiffs seek compensatory dam-

ages and punitive damages in an amount to be set by jury and attorneys' fees.

On July 24, 1997, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed to state a claim upon which the Court may grant relief. Specifically, Defendants argue that Plaintiffs have not identified a constitutional right which Plaintiffs allegedly violated. Defendants offer several additional bases for dismissal of Plaintiffs' claims against Defendants in their official capacities.

Plaintiffs responded to Defendants' Motion and submitted their Motion to File Amended Complaint on August 27, 1997. Plaintiffs argue that the allegations in the Complaint state a claim that Defendants violated Plaintiffs' liberty interest in personal safety and security as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Their Motion to File Amended Complaint seeks to clarify the Complaint in that regard.

Defendants replied to Plaintiffs' Response on September 4, 1997.

## II. Motion to Dismiss

### A. Individual Capacity Claims

Viewing the factual allegations of the Complaint and the reasonable inferences arising therefrom in the light most favorable to Plaintiffs, the Court has concluded that Plaintiffs have stated a claim upon which the Court could grant relief and, therefore, will deny Defendants' Motion to dismiss Plaintiffs' claims against Defendants in their individual capacities. Title 42 U.S.C. § 1983 provides a remedy where persons acting under color of state law deprive individuals of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Walker v. Reed*, 104 F.3d 156, 157 (8th Cir.1997); *Gregory v. City of Rogers, Arkansas*, 974 F.2d 1006, 1009 (8th Cir.1992) (*en banc*) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420

(1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986)), *cert. denied*, 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). Defendants' Motion presents the sole question of whether Plaintiffs have alleged a violation of a constitutionally protected right.[1]

Plaintiffs' core allegation is that Defendants thrust Plaintiffs into a dangerous situation by ordering Ms. Mason to drive herself and her children out of town when Defendants knew that Ms. Mason was under the influence of a high dosage of medication. The Due Process Clause of the Fourteenth Amendment to the United States Constitution is normally understood as restraining the State's power to act rather than as imposing upon the State affirmative duties to protect or care for individuals. *See DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989); *Carlton v. Cleburne County, Arkansas*, 93 F.3d 505, 508 (8th Cir.1996); *Gregory*, 974 F.2d at 1010. Nevertheless, the Clause does place affirmative duties to protect or care for individuals in two situations: (1) where the State has placed an individual in custody or limited the individual's ability to care for himself and (2) where the State has affirmatively placed the individual in a dangerous position which the individual would not otherwise have faced. *See Carlton*, 93 F.3d at 508; *Davis v. Fulton County, Arkansas*, 90 F.3d 1346, 1350–51 (8th Cir.1996); *Gregory*, 974 F.2d at 1010.

Although Plaintiffs allege that Defendants took Ms. Mason into custody, see Complaint at ¶ 14, their claim seems more appropriately analyzed under the "creation of danger" exception. The allegations before the Court do not suggest that Ms. Mason was in custody in a manner that would deprive her of her ability to care for herself or her children. *See Carlton*, 93 F.3d at 508. Plaintiffs' allegations do not indicate that Ms. Mason was like a pretrial detainee or an inmate who

---

1. There are several important issues at large in this litigation which are not, at this point, before the Court. Although they mention the issue, Defendants have not yet raised the defense of qualified immunity. Moreover, no questions of evidentiary sufficiency confront the Court at this stage. Assuming that Plaintiffs survive every motion to dismiss, challenges to their claims based upon the evidence in the case will remain.

could not on her own obtain medical attention or flee from an attack by another individual. *See Kneipp v. Tedder,* 95 F.3d 1199, 1209 n. 22 (3d Cir.1996) (describing restraint on freedom akin to incarceration or institutionalization). Rather, a reasonable interpretation of Plaintiffs' Complaint is that Defendants ordered Ms. Mason to drive, thereby creating a dangerous situation for Plaintiffs which would not have otherwise existed. Therefore, the Court will discuss Plaintiffs' allegations in the context of the category of cases involving a State-created danger.

The Court has discovered no controlling case that is factually analogous to the case at bar, and, in the light of persuasive authority, the question of whether Plaintiffs' allegations implicate the Due Process Clause is close. A recent case from the Sixth Circuit Court of Appeals, *Foy v. City of Berea,* 58 F.3d 227 (6th Cir.1995), suggests that the court should dismiss Plaintiffs' claims. In *Foy,* two friends traveled from Crestline, Ohio, to Cleveland to see a Cleveland Indians baseball game. They picked up a twelve-pack of beer and drove to Berea, Ohio, to pick up another friend at Baldwin–Wallace College. They continued to Cleveland and purchased more beer on the road. The three friends drank on the road, at the baseball game, and at several bars after the game in Cleveland and Berea.

Early that morning, the three returned to the dormitory at Baldwin–Wallace College. At some point in the morning, resident assistants came to the dormitory room to inquire about a false fire alarm, and they called Baldwin–Wallace Security for help. Berea police officers arrived to find the group in the parking lot. They discerned that the two friends who did not attend Baldwin–Wallace had been drinking, but they did not determine the level of their intoxication.

In response to the security guards' representations that the two had caused a disturbance, the police officers ordered the two to leave the campus. Over 45 minutes from Berea, the driver was having trouble staying awake. After resuming the trip after stopping at a rest stop, the two were involved in an accident in which the passenger died.

The driver's blood-alcohol content was .11. *See id.* at 229.

The Sixth Circuit panel in *Foy* held that the Berea police officers were entitled to qualified immunity from claims that they had violated the Due Process Clause because, the panel concluded, they had not violated any federally secured rights. The court noted that no controlling authority had held that "police officers commit a substantive due process violation if, after receiving complaints from the owner of property that intoxicated persons are causing a disturbance on that property, the officers command these individuals to leave the property and the intruders are injured later by their own actions or those of other private parties." *Id.* Writing for the panel, Judge Lively reasoned as follows:

> Here, the defendant police officers did nothing to prevent Foy from protecting himself. Foy and Phillips were free to pull into a local motel or get out of the car once they left the campus. The police did not command them to undertake the long journey back to Crestline, Ohio; only to leave the Baldwin–Wallace campus. The officers may have used bad judgment in telling Foy and Phillips to get in the car and leave, but this command was not an example of arbitrary exercise of the state's power. Neither Foy nor Phillips was ever in custody. No action of the officers deprived Foy and Phillips of the ability to care for themselves.

*Id.* at 231–32. The court noted later in its opinion that "[n]either the Supreme Court nor this court has announced a clearly established right of persons not in custody or incarcerated to recover for a substantive due process violation because the police permitted them to go on their way after a brief encounter." *Id.* at 232. The panel explained that the defendant police officers were not liable because their only failure was not taking "affirmative steps" to protect the two individuals from "a more general possibility of harm." *Id.* There was no evidence, according to the panel, to support an allegation of intentional deprivation of or deliberate indifference to any constitutional right. *See id.*

*Foy* provides the Court with strong, persuasive authority for dismissing Plaintiffs' Complaint. That case, however, does not control this Court's decisions, and the Court is of the opinion that the procedural posture in *Foy* and certain factual differences meaningfully distinguish the case at bar. In *Foy*, the Sixth Circuit panel noted that the police officers never determined the level of the victims' intoxication, and the driver's blood-alcohol level approximately one hour after their encounter was .11. Those facts do not suggest that the two individuals were obviously intoxicated such that the police officers would have known beyond doubt that they would bear a high risk of harm by driving. In fact, the opinion suggests that the accident occurred more from the driver's exhaustion from the lateness of the hour and the day's events than it did from his intoxication.

The case at bar is signally different. The Court is here confronted with no evidence whatsoever, and it is, therefore, bound to accept the allegations in Plaintiffs' Complaint as true. Plaintiffs have alleged that Defendants knew that Ms. Mason would endanger her own life and the lives of her children by driving. Indeed, Plaintiffs allege that she was in a "black-out state" when she left McCrory. The reasonable inference from Plaintiffs' allegations is that Defendants knew that Ms. Mason had taken fifteen anti-anxiety pills as a result of distress about her relationship with Mr. Harrison and knew that the effect of such medication would be life threatening if she were to drive her vehicle. These allegations suffice to make the expectation of harm in the instant case much greater than the expectation of harm in *Foy. See Hilliard v. Walker's Party Store, Inc.,* 903 F.Supp. 1162, 1175 (E.D.Mich.1995) (distinguishing *Foy:* "The crucial difference, however, is that in *Foy* even the driver did not believe that he was intoxicated beyond the legal driving limit, whereas plaintiff ... allegedly attempted to convince defendant officers of his intoxicated state.").

Moreover, the affirmative conduct attributed to the defendant police officers in *Foy* differs materially from the alleged conduct of the police officers in the case before the Court. In the Sixth Circuit case, the panel described the defendant police officers as *permitting* the two intoxicated individuals to depart in their car. The court of appeals also noted that the officers did not require the victims to leave Berea and did not prevent them from stopping at a motel or getting out of the car once they left the college campus. In the instant case, Plaintiffs contend that Defendants *ordered* Plaintiffs into Ms. Mason's car and directed them to leave McCrory. The Court believes that such an allegation distinguishes the relatively hands-offs, activity in *Foy* from the affirmative, authoritative conduct at issue here. If police officers *compel* an individual whom they *know* to be a danger to herself and others to drive a car out of town, those officers have infringed a constitutionally protected interest under the Due Process Clause. Indeed, such action by police officers presents a perverse scenario in which police officers, clothed with the authority of the State, force a citizen to break the law. *See id.* at 1174 (stating that such conduct is unconstitutional).

The reasoning of the *Foy* panel by no means represents a consensus among the courts of appeals. A panel of the Third Circuit Court of Appeals in *Kneipp v. Tedder,* 95 F.3d at 1199, embraced the State-created danger theory on facts that were less fitting than the facts before the Court. In *Kneipp,* a police officer encountered a couple going home from drinking. Both individuals were intoxicated. The man asked to leave and was allowed to go home, and the woman, after the man had left, was sent home. She was later found at the bottom of an embankment, and she suffered debilitating injuries as a result of her exposure to the cold. A Third Circuit panel held that those facts created a triable issue on whether the police officers affirmatively placed the woman in a position of danger such that she had made a viable showing under § 1983. *See id.* at 1201–03.

In the case at bar, the allegations leveled by Plaintiffs are more damning than those evaluated by the *Kneipp* panel. In *Kneipp,* the police officers' only affirmative act was giving the man permission to go home and thereby, the argument goes, increasing the risk of danger to the woman when they left

her. *See id.* at 1210. The Court has no doubt that the *Foy* panel would have rejected the *Kneipp* plaintiffs' § 1983 claims, and, with due respect to the Third Circuit panel, the Court doubts that it would have reached the same result. Essentially, the Court does not agree that the facts in *Kneipp* show the appropriate "affirmative" conduct required under the "creation of danger" exception. *See Carlton,* 93 F.3d at 509 (noting that "mere knowledge of danger" does not trigger duty to protect). In the instant case, however, Defendants are alleged to have given Ms. Mason a direct command to drive her car in spite of their knowledge that she was under the influence of a high dosage of Atavan. The implication is that Ms. Mason had no other option, so, in a very real sense, on the facts as set forth by Plaintiffs, Defendants created the danger which led to Plaintiffs 'injuries.

The controlling decision of the Eighth Circuit Court of Appeals in *Gregory v. City of Rogers, Arkansas,* 974 F.2d at 1006, is distinguishable. In *Gregory,* a police officer lawfully arrested the designated driver of a car on an outstanding warrant. The police officer allowed the designated driver to drive to the police station to clear up the warrant. While the designated driver was in the police station, the two intoxicated passengers drove away and were involved in an accident in which the new driver died and the passenger sustained injuries. The surviving passenger and the deceased driver's estate and immediate family brought an action under § 1983, alleging violations of the Due Process Clause. The district court granted the defendants' motion for summary judgment, concluding that the claims sounded in negligence and thus failed to state a claim under § 1983. *See id.* at 1008–09.

The court of appeals, sitting *en banc,* affirmed.[2] The court held, first of all, that there was insufficient evidence on the record to establish that the defendants possessed the requisite state of mind to establish a violation of the Fourteenth Amendment. *See id.* at 1010–11. Plaintiffs in the instant case

have alleged intent, recklessness, and knowledge on the part of Defendants. Specifically, they state that Defendants ordered Plaintiff to drive, "knowing said actions would endanger the Plaintiffs since the Defendants intentionally and deliberately placed the minor children into the vehicle operated by the Plaintiff, who they knew was physically incapable of operating a vehicle in a safe and prudent manner." Complaint at ¶ 14. The Court must accept those allegations as facts at this stage in the lawsuit. Thus, the first and primary holding of *Gregory* is completely irrelevant to this litigation. *Cf. Kneipp,* 95 F.3d at 1210 (distinguishing *Gregory* where officer admitted that he knew that individual was intoxicated).

Second, the court of appeals commented that, even if the defendants had known that the passengers of the car were intoxicated, the plaintiffs' claims would have failed because a reasonable trier of fact could not have found that the defendants had affirmatively placed the plaintiffs in danger by leaving them, intoxicated, in a car in the police station's parking lot. *See Gregory,* 974 F.2d at 1011. It is the opinion of the Court that the court of appeals' point was that the defendants did absolutely nothing to compel the intoxicated passenger to drive the car. *See Carlton,* 93 F.3d at 509 (citing absence of affirmative conduct); *Freeman v. Ferguson,* 911 F.2d 52, 55 (8th Cir.1990) (requiring affirmative action increasing danger of or vulnerability to harm). In fact, the court of appeals blamed the accident on the designated driver, who was in the police station at the time. *See Gregory,* 974 F.2d at 1011–12. The court noted that the police officer did not leave the intoxicated passengers stranded. *See id.* at 1011 (citing *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *White v. Rochford,* 592 F.2d 381 (7th Cir.1979)). In fact, the police officer placed no restraints or demands on the passengers of the car, and they were never in custody or under supervision. *See id.* at 1011–12.

---

**2.** Judge Heaney dissented from the *en banc* opinion, and Judges Richard S. Arnold, McMillian,

Lay, and John R. Gibson joined in the dissent.

In the case at bar, Plaintiffs have made materially different allegations. Rather than direct their attention to a third party, as the defendants did in *Gregory,* Defendants placed Ms. Mason's children in the car and ordered her to drive out of town. Ms. Mason performed the act of taking the Atavan, which made her unfit to drive, but Defendants, according to the allegations in the Complaint, affirmatively created the dangerous situation which led to Plaintiffs' injuries by ordering her to drive when they had knowledge of her physical condition. In *Gregory,* there was no affirmative act directed toward the plaintiffs. The presence of such an act in the instant case makes it meaningfully distinguishable from *Gregory* and from *Foy. See Kneipp,* 95 F.3d at 1206 and 1210 (distinguishing "creation of danger" cases by the presence or absence of defendants' affirmative acts that endangered victims).

Plaintiffs have identified a constitutionally protected interest. Although some persuasive authority suggests the contrary, those cases and the case before the Court bear meaningful differences that require the result the Court reaches today. It is obvious that Plaintiffs would have been less likely to be injured had they not been ordered into Ms. Mason's car. *See Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.) (noting need for heightened vulnerability or danger resulting from state action), *cert. denied,* 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993). But that is not the extent of Plaintiffs' allegations. Although it is clear that states have no duty to protect citizens from drunk drivers, *see, e.g., id.* at 1125, police officers may not, consistent with the demands of the Constitution, compel individuals whom they know to be heavily medicated to expose themselves and others to danger by ordering them to drive.

### B. Official Capacity Claims

■ "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Municipal liability under § 1983 can arise where a plaintiff alleges that the municipality's "policy, custom, or practice caused the constitutional injury." *Haberthur v. City of Raymore, Missouri,* 119 F.3d 720, 723 (8th Cir.1997) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 123–24, 112 S.Ct. 1061, 1067–68, 117 L.Ed.2d 261 (1992)); *see Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* — U.S. —, —, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). The plaintiff must show that the municipality, through deliberate conduct, was the "moving force" behind the constitutional violation. *Brown,* — U.S. at —, 117 S.Ct. at 1388. Municipal liability is limited to conduct for which the municipality itself is responsible; therefore, *respondeat superior* does not apply under § 1983. *See id.; Andrews v. Fowler,* 98 F.3d 1069, 1074 (8th Cir.1996).

■ Although Plaintiffs have raised allegations sufficient to implicate the protections of the Due Process Clause, they have not alleged a policy, custom, or practice of the City of McCrory that would permit the Court to grant relief premised on municipal liability. Nothing in Plaintiffs' Complaint suggests that the alleged constitutional violation was the product of municipal action such that the City of McCrory itself is in some way responsible. The allegation that Defendants were acting under color of state law is clear, but the Complaint is devoid of any allegation to transform the alleged illegal conduct from violations by individual tortfeasors into unconstitutional activity by the governmental body. Therefore, the Court will dismiss Plaintiffs' claims against Defendants in their official capacities.

### III. Motion for Leave to File Amended Complaint

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that courts shall grant leave to amend "freely ... when justice so requires." The Court has reviewed Plaintiffs' proposed Amended Complaint, and the only change is an additional paragraph expressly setting forth Plaintiffs' position that their claims arise under the Due Process Clause of the Fourteenth Amendment. The Court does not discern any prejudice to Defendants that would emerge as a result of the

proposed amendment and, therefore, will grant Plaintiffs' Motion to File Amended Complaint.

### IV.  Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [3] be, and it is hereby, DENIED IN PART and GRANTED IN PART. Plaintiffs' claims against Defendants in their individual capacities remain for adjudication, and Plaintiffs' claims against Defendants in their official capacities are hereby dismissed.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Amended Complaint [4] be, and it is hereby, GRANTED.

---

3.  Docket No. 4.

4.  Docket No. 6.