**Jacqueline E. WYATT, Plaintiff,**

v.

**John F. KRZYSIAK, individually and in his capacity of a New Castle County police officer, Defendant.**

**No. CivA 98–177 MMS.**

United States District Court, D. Delaware.

Dec. 16, 1999.

Michael W. Modica, Wilmington, DE, for plaintiff.

Stephanie D. Kinder, Assistant County Attorney, New Castle County Law Department, New Castle, DE, for defendant.

## OPINION

SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

This case presents the issue: Does a person allegedly driving while under the

influence of alcohol have a viable constitutional tort claim against a police officer for *failing* to arrest her and/or directing her to continue driving after stopping her for speeding?

On April 7, 1998, Plaintiff Jacqueline Wyatt filed this action, jointly and severally, against Defendant Officer John J. Krzysiak, individually and in his official capacity as a New Castle County police officer, and Defendant Stephenson Williams.[1] Wyatt alleges that, while driving under the influence of alcohol, she sustained injuries when her automobile collided with Williams' truck soon after Officer Krzysiak stopped Wyatt for speeding, did not arrest her, and told her to continue driving. Count I, the only count predicated on federal law, demands monetary damages against Krzysiak, pursuant to 42 U.S.C. § 1983, alleging that Krzysiak violated Wyatt's substantive due process rights under the Fourteenth Amendment. Count II demands monetary damages against Krzysiak, alleging violations of Delaware state tort law. Count III demands monetary damages against Williams, alleging negligence. Count IV alleges that Krzysiak and Williams are jointly and severally liable.

This Court has federal question jurisdiction over Count I, the § 1983 claim, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims in Counts II, III, and IV, pursuant to 28 U.S.C. § 1367(a).

On August 27, 1999, after close of discovery, Krzysiak filed a motion for summary judgment as to all claims against him. For the reasons stated below, Krzysiak's motion for summary judgment will be GRANTED.

## II. STANDARD OF REVIEW

Summary judgment shall be granted if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Showalter v. Univ. of Pittsburgh Med. Ctr.,* 190 F.3d 231, 234 (3d Cir.1999); Fed.R.Civ.P. 56. In considering a motion for summary judgment, the Court views the record and inferences therefrom in the light most favorable to Wyatt, the non-moving party. *See Showalter,* 190 F.3d at 234.

## III. FACTS

### A. Earlier That Day

On April 8, 1996, Plaintiff Jacqueline Wyatt, age 42, completed her shift at a restaurant in Newark, Delaware and drove to Wilmington, Delaware for individual substance abuse counseling at 5:00 p.m. After this session, she had dinner at a fast food restaurant and then returned to the counseling center for group substance abuse counseling. When counseling ended, at approximately 8:00 p.m., Wyatt drove to her friend Gary Williamson's house in Elsmere, Delaware. On the way to his house, Wyatt recalls consuming one 12 ounce beer.

Wyatt drove Williamson to Pennsylvania to see a man known as Big Bob, to get tattoos. They arrived at Big Bob's at about 9:30 p.m. While at Big Bob's, Wyatt consumed four or five 12 ounce beers. At about 11:00 p.m., Wyatt drove Williamson from Big Bob's back to Williamson's house. During that leg of the trip, Wyatt does not recall if she drank any beer but thinks that she did not. Wyatt dropped Williamson off at his house and then continued to drive along Route 896 towards her home. Wyatt claims she did not stop for a drink at Williamson's and did not drink during her drive home.

### B. Krzysiak's Stop of Wyatt

In the early morning hours of April 9, 1996, around 2:00 a.m., on Route 896 in New Castle County, Delaware, New Castle

---

1. Williams was dismissed with prejudice with the consent of Wyatt on October 25, 1999.

County Police Officer John Krzysiak observed Wyatt pass his patrol car. Krzysiak's car was traveling at the posted speed limit of 55 miles per hour. Krzysiak began to pace Wyatt using his speedometer and radar. He does not recall her exact speed but knows that it exceeded 55 m.p.h. Krzysiak also observed that Wyatt wandered slightly in her lane but it was not excessive and she did not cross a lane marker. Krzysiak noted that Wyatt did not swerve, lane hop, drive on the wrong side of the road, drive on the shoulder, or drive at an exceptionally low speed.

Krzysiak activated his emergency equipment in order to stop Wyatt. Wyatt responded by smoothly slowing down, turning off Route 896 onto Route 15, and stopping on the unimproved shoulder. What happened during the traffic stop that ensued is subject to some dispute. Where the facts are in dispute, the procedural posture dictates that Wyatt's (the non-movant) version of the facts be accepted as true. Facts that Wyatt does not contradict, including facts not remembered by Wyatt, are not in dispute. Accordingly, where Wyatt's version differs from Krzysiak's, her account is adopted for purposes of resolving this summary judgment motion unless it creates a genuine issue of material fact.

Krzysiak pulled over Wyatt's car because of the speeding. Krzysiak also admitted that another reason was his suspicion that the driver may have been under the influence of alcohol. When he approached the car, Wyatt stated that she may have been speeding but did not know because her dashboard light was out. Krzysiak noticed that the light was indeed out.

Krzysiak asked Wyatt for her license, insurance, and registration. Wyatt smoothly and easily retrieved the registration and insurance from the glove compartment. Wyatt did not have her license with her and told Krzysiak it had been suspended. Krzysiak noticed a flattened paper bag with two rings of an empty six pack drink container hanging out of the bag. Wyatt did not smell any odor of alcohol coming from the car.

At this point, Krzysiak asked Wyatt to exit the car and move to the rear of the car. Wyatt exited the car and walked to the back of the car on a gravel surface without difficulty. While standing at the back of the car, Krzysiak did not detect any odor of alcohol on Wyatt. Wyatt did not have any trouble keeping her balance.

Krzysiak administered an alphabet test, which requires the subject to recite the alphabet, and a counting test, which requires the subject to count backwards from ten to one. Both tests are listed on every standard New Castle County Alcohol Influence Report. Wyatt performed both tests flawlessly and her speech was not slurred. After completing the tests, Krzysiak asked Wyatt to walk to his patrol car which she did without staggering or stumbling.

Wyatt was eventually seated in the back of the patrol car. In the patrol car, Krzysiak asked Wyatt a series of pedigree questions such as her address, phone number, zip code, date of birth, height, and weight. Wyatt answered all questions clearly without slurring her speech. Krzysiak also noted a faint odor of alcohol coming from Wyatt. Krzysiak asked Wyatt if she had been drinking and she responded that she had one beer. Krzysiak ran her record through the computer and determined that her license was suspended but that there were no outstanding warrants for her arrest. Krzysiak then issued her a warning for speeding and a summons for Driving During Suspension.

Krzysiak then asked Wyatt if he could call anyone to come get her. She responded that she lived with her elderly mother and that it was too late at night for her mother to come and get her. Wyatt insists that Krzysiak never offered her a ride home. Instead, he told her "You wait till I leave and then you pull off." Wyatt then returned to her car. Krzysiak drove

off and Wyatt sat in her car for 10–30 minutes. She then started her car and began to drive home.

## C. After the Stop

About one half hour after the stop, at 2:47 a.m., police were notified of an accident involving Wyatt and a tractor trailer driven by Defendant Stephenson Williams. Wyatt attempted to pass the truck, ended up underneath the trailer, and sustained serious physical injuries. Trooper Cory Godek of the Delaware State Police responded to the scene of the accident, where Wyatt was still in her automobile. Godek detected a faint odor of alcohol on Wyatt and asked her' if she had been drinking. Wyatt responded that she had two beers but that she could not be drunk because another officer had stopped her and told her to "drive on." Godek noted that Wyatt slurred her speech but could not determine whether that was due to the effects of alcohol or her injuries in the accident. Wyatt claims she had nothing to drink between the time she was stopped by Krzysiak and the time of the accident.

Wyatt was taken to Christiana Hospital and was given a blood alcohol test at 6:11 a.m. Her blood alcohol level at that time was 0.13, which is over the Delaware legal threshold of 0.10 for driving an automobile. Dr. Ali Hameli, Wyatt's forensic pathologist, testified about calculations to determine Wyatt's blood alcohol level at the time of the stop, at about 1:55 a.m. Dr. Hameli assumed that, between 8:00 p.m. or 9:00 p.m. and midnight, Wyatt consumed five or six 12 ounce beers and that alcohol is burned off in the body at a rate of 15 mg/hour. Dr. Hameli conservatively estimated that at 1:55 a.m., Wyatt's blood alcohol level was approximately 0.19. He further testified that at this level, a person is unfit to drive and would exhibit outward signs of mental and physical impairment.

Subsequent to that night, Officer Krzysiak was disciplined for neglect of duty by the New Castle County Department of Public Safety. He received a one-day suspension of duty for leaving a woman alone on the side of a road late at night in a remote area. Krzysiak admits he was neglected his duties in this matter. The neglect of duty disciplinary papers mention nothing about whether Krzysiak should have known that Wyatt was under the influence of alcohol.

## IV. DISCUSSION

In his motion for summary judgment, Krzysiak raises four arguments. First, Krzysiak's alleged actions in Count I, as a matter of law, do not amount to a violation of Wyatt's substantive due process rights under the Fourteenth Amendment. Second, even if Wyatt has alleged a constitutional violation in Count I, Krzysiak is entitled to qualified immunity. Third, to the extent that Count I names Krzysiak in his official capacity, this is a suit against New Castle County, which cannot be held liable under § 1983 because it had no custom or policy in place which would have violated Wyatt's constitutional rights. Fourth, the pendant state law tort claims in Counts II, III, and IV should be dismissed because the court lacks jurisdiction and/or because Krzysiak has immunity under state law.

As to Count I, the Court holds that Krzysiak's actions do not amount to a constitutional violation of Wyatt's substantive due process rights under the Fourteenth Amendment. Second, even if Krzysiak did violate Wyatt's constitutional rights, Krzysiak is entitled to qualified immunity. Third, to the extent that Count I names Krzysiak in his official capacity, New Castle County is not liable under § 1983.[2] Therefore, the court will grant summary judgment in favor of Krzysiak on Count I of the complaint. Because the Court has

---

**2.** Wyatt concedes that Krzysiak cannot be held liable in his official capacity. *See, infra,* text section III.C.

only supplemental jurisdiction over Counts II, III, and IV, the Court will dismiss these counts without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## A. State Created Danger Claim

■ In Count I, Wyatt asserts a claim against Krzysiak, in his individual capacity, pursuant to § 1983, alleging that Krzysiak violated Wyatt's substantive due process rights under the Fourteenth Amendment. Wyatt bases her claim on the state created danger theory of substantive due process. The state created danger doctrine, adopted by the Third Circuit Court of Appeals in 1996, places an affirmative duty on an official to protect and care for an individual when the official has placed the individual in a dangerous position that he would not have otherwise faced. *See Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir.1996). The complaint alleges Krzysiak violated this doctrine by "ordering the Plaintiff to drive when he knew or should have known that it was unsafe to drive because she was under the influence of alcohol."[3] Complaint ¶ 22.

■ In order to make out a state created danger claim, Wyatt must prove four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) the state actor acted in willful disregard for the safety of the plaintiff;

(3) there existed some relationship between the state and the plaintiff; and,

(4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp*, 95 F.3d at 1208. The Court concludes that as to elements (1) and (2) there is a genuine issue of material fact. As to element (3), there is no genuine issue of

material fact and Wyatt's claim meets this element as a matter of law. However, as to element (4), there is no genuine issue of material fact and Wyatt cannot prove this element as a matter of law. Therefore, summary judgment in favor of Krzysiak, in his individual capacity, on Count I is appropriate.

### 1. Foreseeability of Harm

The first element inquires into whether Wyatt's injuries in the car accident were a foreseeable and fairly direct consequence of Krzysiak's failure to assist her in getting home. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). This element breaks down into a two part inquiry: (i) whether the circumstances present would be a fairly direct cause of the injury; and (ii) whether the officer knew or should have known of the circumstances that would lead to the harm. *See id.* at 908–09 (finding that leaving a door open to the school would not be a fairly direct cause of an attack; and, officials had no reason to know that perpetrator may enter school through open door). The complaint alleges that (i) driving under the influence of alcohol is a fairly direct cause of injuries in a car accident; and that (ii) Krzysiak knew or should have known that Wyatt was under the influence of alcohol.

First, the driver of a car being under the influence of alcohol is a fairly direct and foreseeable cause of an automobile accident. *See Kneipp*, 95 F.3d at 1208 (a pedestrian being drunk is a fairly direct cause of her stumbling into a ditch and getting hurt); *see also Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir.1993) (high danger of accidents because of drunk drivers). For purposes of this summary judgment motion, there is no factual dispute that Wyatt was actually under the influence of alcohol at the time of the stop and

---

**3.** At oral argument, Wyatt alternatively argued that Krzysiak violated the state created danger doctrine by ordering her to drive when he knew she had a suspended license because driving on a suspended license would violate the law. Since this alternative theory of liability has not been pled in the Complaint, the Court declines to address this argument.

the accident. Therefore, the automobile accident was a fairly direct and foreseeable result of her driving under the influence of alcohol.

Second, Wyatt must prove that Krzysiak knew or should have known that she was under the influence of alcohol.[4] *See Kneipp*, 95 F.3d at 1208 (officer liable when he knew plaintiff was under influence of alcohol); *Reed*, 986 F.2d at 1127 (officer liable when he knew or should have known that driver was under influence of alcohol); *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992) (officer not liable when he had no reason to know driver was under influence of alcohol). For purpose of this summary judgment motion, there is no dispute that Krzysiak lacked actual knowledge of Wyatt being under the influence of alcohol. However, there is a genuine issue of material fact as to whether Krzysiak should have known that Wyatt was under the influence of alcohol.

According to Krzysiak's version of the facts, he had no reason to know that Wyatt was under the influence of alcohol because:

(1) Wyatt appropriately and smoothly pulled over when she was stopped for speeding;

(2) Wyatt was only speeding and did not have any difficulty in driving or turning;

(3) Wyatt did not swerve, lane hop, drive on the wrong side of the road, drive on the shoulder, or drive at an exceptionally low speed;

(4) Wyatt responded appropriately in handing over registration and proof of insurance;

(5) Wyatt did not fidget when handing over documents;

(6) Wyatt easily found all of the documents;

(7) Wyatt did not tell Krzysiak her license was suspended for DUI;

(8) Krzysiak detected no odor of alcohol while she was in her car and only a faint odor while she was in the patrol car;

(9) although Krzysiak noticed a flattened bag with two rings of a six pack container hanging out of it in the passenger seat of the car, Wyatt told Krzysiak that she had drank only one beer;

(10) Wyatt exited her vehicle without difficulty;

(11) Wyatt had no trouble walking from her car to the police cruiser;

(12) Wyatt exhibited no trouble with balance;

(13) Wyatt passed "ABC test" by reciting the alphabet;

(14) Wyatt passed the "counting test" by counting backwards from 10 to 1;

(15) Wyatt's speech was not slurred;

(16) Wyatt was able to answer questions regarding spelling of name, address, phone number, zip code, date of birth, height, and weight;

In contrast, Wyatt presents the following factual disputes, which, if true, Krzysiak should have known that Wyatt was under the influence of alcohol:

(1) Wyatt was weaving within her lane;

(2) Wyatt told Krzysiak that she had been drinking but does not remember if she said how much;

(3) Wyatt had her license suspended for DUI and Krzysiak should have known this by simply using the police database to make the appropriate inquiry;

(4) Krzysiak failed to perform any of the sobriety tests outlined in NCCCP Directive 61;

4. Krzysiak argues that *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir.1995), stands for the proposition that the police must have *actual* knowledge of the factual circumstances. However, the Third Circuit Court of Appeals frames the issue as whether the offi-cer "could have foreseen" the outcome. *See Morse*, 132 F.3d at 908. Therefore, the appropriate inquiry is to whether the officer knew or should have known the factual circumstances.

(5) the two mental tests allegedly performed by Krzysiak were not recommended by NCCCP Directive 61;

(6) Krzysiak admitted that one of the reasons for the stop was suspicion of DUI;

(7) Wyatt does not recall if Krzysiak asked her pedigree questions;

(8) Wyatt's blood alcohol level four hours after the stop was 0.13 casting doubt on the credibility of Krzysiak's testimony;

(9) Wyatt's blood alcohol level at the time of the stop has been conservatively estimated to be 0.19, casting doubt on the credibility of Krzysiak's testimony because, at that level, she should have exhibited outward signs of impairment.

Given these material factual disputes as to whether Krzysiak should have known that Wyatt was under the influence of alcohol, there is a genuine issue of material fact as to whether the accident was foreseeable. As such, it would be inappropriate for the Court to grant summary judgment based upon the first prong of the test.

## 2. Willful Disregard

Under the second prong, Krzysiak is liable only if he acted with willful disregard or deliberate indifference for the safety of Wyatt. *See Morse,* 132 F.3d at 910. The Third Circuit Court of Appeals has explicitly declined to distinguish between willful indifference and deliberate indifference. *See id.* at n. 10. This level of mens rea lies somewhere between intent and negligence. *See id.* It is generally defined as "requiring not an intent, but a failure to act appropriately in light of a known or obvious risk." *Id.* There must be a "disregard of a high and excessive degree of danger" of which the officer knows or should know.[5] *See id.*

For analysis of this prong, the Court assumes that Krzysiak knew or should have known that Wyatt was under the influence of alcohol. If so, Krzysiak clearly should have known that her driving would create a high degree of risk of an automobile accident. *See Kneipp,* 95 F.3d at 1208; *see also Reed,* 986 F.2d at 1127 (high danger of accidents because of drunk drivers). The issue then becomes whether Krzysiak's subsequent actions show a disregard of this high and excessive degree of danger.

Several cases analyze whether an officer's actions constitute a willful disregard of a high degree of risk of danger. *Compare Kneipp,* 95 F.3d at 1209 (officer showed willful disregard by making obviously inebriated woman walk home alone and not offering her a ride); *Maxwell v. School District of the City of Philadelphia,* 53 F.Supp.2d 787, 793 (E.D.Pa.1999) (teacher showed willful disregard by telling obviously dangerous students "I don't care what you do as long as you don't bother me") *with Estate of Burke v. Mahanoy City,* 40 F.Supp.2d 274, 281–82 (E.D.Pa.1999) (officer did not show willful disregard by failing to arrest a drunk party-goer who made seemingly idle threats of violence); *Foy v. City of Berea,* 58 F.3d 227, 232 (6th Cir.1995) (officer did not show deliberate indifference by giving drunk student option of being arrested or leaving the campus).

In this case, there are material factual disputes about what Krzysiak did after he stopped Wyatt that make resolution of this issue inappropriate for summary judgment. For example, Krzysiak asserts that he offered Wyatt a ride home three times and told her that she could stay at the side of the road but could not drive. In contrast, Wyatt asserts that Krzysiak offered to call someone to pick her up, but never offered her a ride home and told her to

---

**5.** Krzysiak argues that willful indifference requires that the officer must have actual knowledge of the dangerous condition. Although "intent" requires "proceeding with knowledge that harm is substantially certain," willful indifference requires either actual knowledge or the knowledge of a reasonable person in that position. *See id.* Thus, actual knowledge is not required to meet this prong of the test.

drive off after he left. Given these conflicting material facts, it is impossible to resolve as a matter of law whether Krzysiak acted with willful disregard for a high degree of risk of harm. Therefore, it is inappropriate to grant summary judgment on this prong of the test.

### 3. Foreseeable Victim

Under the third prong, Wyatt must prove that she was a foreseeable victim, in a tort sense, of Krzysiak's acts or omissions. *See Morse*, 132 F.3d at 912. A victim is not foreseeable only when the officer's actions create a threat to the general population. *See id.* at 913. Instead, a victim is foreseeable if he is a particular person or class of persons about whom the officer knows or should know would be exposed to the danger.[6] *See id.* at 913.

In *Kneipp*, the police ordered a drunk woman to walk home alone after stopping her and questioning her. *See Kneipp* 95 F.3d at 1209. The court held that she was a foreseeable victim because the police had contact with her and knew she could be exposed to a harm. Likewise, in this case, there is no factual dispute that Krzysiak had contact with Wyatt. Therefore, he knew or should have known that she could be a victim of some harm. As such, it would be inappropriate to grant summary judgment in favor of Krzysiak on this prong of the test.

### 4. Increased Risk of Injury

Under the fourth prong, an officer is only liable if the officer's acts or omissions increased the risk of injury beyond what it would have been had the officer not intervened at all.[7] *See DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Kneipp*, 95 F.3d at 1209; *see also Morse*, 132 F.3d at 914–15 (the state officials did not increase risk by leaving open a door to a school which afforded entry to a perpetrator who attacked a teacher). Even if the first three prongs are met, the Court holds that Krzysiak's acts and/or omissions did not increase the risk of injury to Wyatt because she would have been driving under the influence of alcohol had Krzysiak not intervened.

The case law from this and other circuits holds that, under the state created danger doctrine, an officer is not liable unless he increases the risk of harm to the victim. In *Reed*, the police arrested a sober driver and left an inebriated passenger to drive the car, resulting in a collision. *See Reed*,

---

**6.** Krzysiak argues that this prong is not met unless the defendant has actual knowledge of the impending harm. *See* D.I. 49 at 15 (citing *Sciotto v. Marple Newtown School Dist.*, 1999 WL 79136 (E.D.Pa.1999); *Burke*, 40 F.Supp.2d 274). However, as discussed in the text, *supra*, knowledge of impending harm is relevant only to the analysis of the foreseeability of the harm. The foreseeable victim requirement analyzes whether the officer knew or should have known of the victim who could be exposed to the harm. *See Morse*, 132 F.3d at 912.

The cases relied upon by Krzysiak fail to support his position. In *Sciotto*, public school officials instructed and encouraged a college wrestler to wrestle a lighter weight high school wrestler, resulting in injuries to the high school wrestler. *See Sciotto* at *2. The court held that the high school wrestler was a foreseeable victim because he belonged to a class of persons that could be harmed by the officials' actions. *See id.* at *4. In *Burke*, after police officers failed to arrest two inebri-

ated individuals who made threats to harm the victim at a party, the individuals returned to the party and shot the victim. *See Burke*, 40 F.Supp.2d at 277. The court held that the victim was not a foreseeable victim because the police cannot be expected to protect every potential target of violence. *See id.* at 282.

Thus, *Sciotto* and *Burke* both addressed the question of when a victim is foreseeable if the victim has no direct contact with the local officer. In contrast, this case presents a victim, Wyatt, who had direct contact with Officer Krzysiak. There is no question that Wyatt would be a foreseeable victim of any potential harm if the other prongs of the test were met.

**7.** Krzysiak argues that this prong requires an affirmative action on behalf of the officer. However, *Morse* held that both affirmative acts and omissions count towards this analysis. The relevant inquiry is whether the act or omission increases the risk of harm. *See Morse*, 132 F.3d at 914–15.

986 F.2d at 1125. Applying an analysis similar to the Third Circuit's, the court held that the police increased the risk of a drunk driving accident by taking a sober driver out of the car and leaving a drunk passenger to drive the car home. *See id.* However, the court also noted that had the officer arrested an inebriated driver and left another inebriated passenger to drive the car, the officer would not have increased the risk of an accident because the risk of drunk driving would remain the same. *See id.*

Similarly, in *Sellers v. Baer,* the police arrested a drunken patron of a state fair, drove him to a police station, and released him without any money or means of getting home. *See Sellers v. Baer,* 28 F.3d 895, 900 (8th Cir.1994). Although he was struck by a car as he attempted to walk home, the court held that the police did not increase the risk of harm to the patron because they put him in a safer place, where he could have called for a ride home. *See id.*

In other cases relied on by Wyatt, the police incurred liability under a state created danger theory only when their actions increased the risk of an injury. In *Kneipp,* the police stopped a husband and his inebriated wife as they were walking home, sent the husband home alone, and then told the inebriated wife to walk home alone, which resulted in injuries to the wife. *See Kneipp,* 95 F.3d at 1209. The court held that the police increased the risk of an injury to the wife because they removed the support of her husband by ordering her to walk home alone. *See id.*

In *Wood v. Ostrander,* the police arrested a drunk driver, impounded the car, and left his sober passenger alone in a high crime neighborhood, which resulted in injuries to the passenger. *See Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989). The court held that the police increased the risk of danger to the passenger by placing her in a dangerous situation. *See id.* Likewise, in *Mason v. Barker,* the police arrived at a domestic dispute, found

the wife under the influence of sedatives, and ordered her to drive herself and her children out of town. *See Mason v. Barker,* 977 F.Supp. 941, 943 (E.D.Ark.1997). The court held that the police officers increased the risk of danger to the wife by ordering her to drive when they knew she was clearly under the influence of drugs. *See id.* at 945.

Krzysiak did not increase the risk of harm to Wyatt. It is undisputed that, at the time of the stop, Wyatt was already driving while under the influence of alcohol. It is also undisputed that, had Krzysiak failed to intervene, Wyatt would have continued driving while under the influence of alcohol. In addition, it is undisputed that after the stop, Wyatt did indeed drive while under the influence of alcohol. There is a factual dispute as to what Krzysiak told Wyatt at the end of the traffic stop. Krzysiak claims that he offered her a ride home three times, that she refused three times, and that he told her that she could not drive home because she had a suspended license. *See* Krzysiak Deposition at 38:8–39:19. Wyatt claims that Krzysiak never offered her a ride home and told her "wait till I leave and then you pull off." *See* Wyatt Deposition at 66:23–68:2. Assuming Wyatt's version of the facts is correct, the only result of Krzysiak's intervention is Wyatt continued to drive under the influence of alcohol. At worse, Krzysiak left Wyatt in the same position as she would have been in had he not intervened at all. It follows that Krzysiak did not increase the risk of harm to Wyatt, even if he told her to drive while under the influence of alcohol. *Cf. Reed,* 986 F.2d at 1124 ("police officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring 1983 liability").

In summary, Krzysiak did nothing to increase the risk of danger to Wyatt. Even if Krzysiak ordered Wyatt to drive after he knew that she was under the influence of alcohol, he did not place her in a more unsafe position, because she had

already been driving while under the influence of alcohol. If Krzysiak had never intervened, Wyatt still would have been driving while under the influence of alcohol and exposed to the same risk of an automobile accident. Because, under any version of the facts, Krzysiak did not increase the risk of harm to Wyatt, she cannot prove the fourth prong of the test, as a matter of law. Therefore, the Court will grant summary judgment on Count I of the complaint in favor of Krzysiak, in his individual capacity.

## B. Qualified Immunity[8]

■ Assuming *arguendo* that Krzysiak did violate Wyatt's substantive due process rights, summary judgment on Count I in favor of Krzysiak, in his individual capacity, is still appropriate because he is entitled to qualified immunity. The doctrine of qualified immunity shields a local government official from individual liability for civil damages as long as his conduct does not "violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Johnson v. Horn,* 150 F.3d 276, 286 (3d Cir.1998). Rights are clearly established if a reasonable person in the official's position would have known that, in light of decided case law, the action would be illegal. *See id.*

Krzysiak argues that the alleged state created danger theory of substantive due process had not been clearly established as of April, 1996, the time of Wyatt's stop. First, Krzysiak asserts that the Third Cir-

cuit Court of Appeals did not expressly adopt the state created danger theory, as a general matter, until its decision in *Kneipp* in September 1996, six months after Wyatt's stop. Second, Krzysiak argues that, even if the state created danger doctrine had been clearly established as a general matter, it was not clearly established in analogous factual circumstances even remotely related to the time of Wyatt's stop. Specifically, Krzysiak asserts that no Third Circuit Court of Appeals case clearly established liability for an omission, as opposed to an affirmative act, until the decision in *Morse* in 1997.

Wyatt responds that the state created danger theory, as a general matter, was clearly established by Supreme Court precedent in *DeShaney* in 1989. Second, Wyatt argues that the Third Circuit Court of Appeals recognized the existence of a state created danger doctrine, as a general matter, in *Mark,* in 1995. Finally, Wyatt contends that the state created danger theory in factually analogous cases was clearly established by several other circuits prior to Wyatt's stop.[9]

■ Whether law is clearly established depends on the level of generality at which the court analyzes the law. *See* 2 Civil Actions Against State and Local Government § 11.34 (2d ed.1992). The law must be established with some level of particularity. *See id.* Officers are expected to apply general principles of law to the facts of sufficiently analogous cases. *See id.* (citing *Gooden v. Howard County,* 917 F.2d 1355 (4th Cir.1990); *Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990)). In addition, the question may turn on what precedent

---

8. Courts often analyze qualified immunity before determining the merits of a claim in the case in order to spare the litigants the expense of further discovery and litigation. However, discovery is closed and treating the merits facilitates understanding the qualified immunity discussion.

9. At oral argument, Wyatt appeared to proffer a fourth theory as to why Krzysiak is not entitled to qualified immunity. Wyatt argued that when Krzysiak ordered Wyatt to drive,

while under the influence of alcohol and while on a suspended license, he violated a clearly established constitutional rule that officers may not order a citizen to violate the law. Wyatt attempted to distinguish this argument from her arguments as to why state created danger was clearly established. The Court declines to address this argument since it has not been briefed and was not raised prior to oral argument.

is required for law to be clearly established. The Third Circuit Court of Appeals has strongly indicated that U.S. Supreme Court precedent and Third Circuit Court of Appeals precedent will clearly establish a legal rule. *See Chinchello v. Fenton,* 805 F.2d 126 (3d Cir.1986). On the other hand it has refused to decide what weight to give other circuit decisions for purposes of finding clearly established law. *See Johnson,* 150 F.3d at 286.[10] However, regardless of the level of generality at which one views this case and regardless of which law applies, the law of state created danger was not clearly established at the time of Wyatt's stop in April, 1996.

At the highest level of generality, the state created danger theory of substantive due process liability, as a general matter, was not clearly established in the Third Circuit Court of Appeals as of April 1996. The Supreme Court case of *DeShaney* did not clearly establish a state created danger theory of substantive due process. *See DeShaney,* 489 U.S. at 201, 109 S.Ct. 998. Justice Rehnquist's majority opinion held that the state has an affirmative duty to protect an individual only in limited circumstances such as when an official takes a person into custody and holds him against his will. *See id.* In declining to find a duty to protect a child from his father's abuse, the Court wrote, "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to make him more vulnerable to them." *Id.*

*DeShaney* did not clearly establish a legal rule that an officer has a duty not to create a danger to an individual. The other circuits have found it necessary to establish a state created danger doctrine by extrapolating from language in the *De-Shaney* opinion.[11] Moreover, *DeShaney* actually denied the creation of a state created danger theory under the facts of that case, leaving an open question as to what facts, if any, would establish such a theory. *See DeShaney,* 489 U.S. at 201, 109 S.Ct. 998.

The decisional law of the Third Circuit Court of Appeals also failed to clearly establish the state created danger doctrine as a viable theory prior to *Kneipp* in September, 1996. *See Henderson v. City of Philadelphia,* 1999 WL 482305, *14 (E.D.Pa.1999). In *Kneipp,* the appellate court expressly adopted the state created danger theory and the four prong test for its analysis. *See id.* Prior to *Kneipp,* the Third Circuit Court of Appeals expounded on the elements of the test and recognized its existence in other circuits, but *expressly* refused to adopt it. *See Mark,* 51 F.3d at 1152 (refusing to "decide definitively whether the state created danger theory is a viable mechanism for finding a constitutional injury"); *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1373 (3d Cir.1992); *Brown v. Grabowski,* 922 F.2d 1097, 1114–16 (3d Cir. 1990). As of April, 1996, "the Third Circuit's most recent discussion of the state-created danger theory had cast substantial doubt on its validity." *Henderson* at *14 (citing *Mark,* 51 F.3d at 1152; *DiJoseph v. City of Philadelphia,* 953 F.Supp. 602, 608 (E.D.Pa.1997)). Although, "a particular theory need not have been explicitly adopted by a Court of Appeals for it to constitute the 'clearly established law' of that circuit," the Third Circuit Court of Appeals had done the opposite—it had cast doubt on the validity of the state created

---

10. Moreover, the other circuits are split as to how much weight to give foreign circuits in evaluating how clearly law is established. *See id.* at n. 6. The other courts of appeals take three approaches to foreign circuit decisions: (1) other decisions may be considered (2d, 7th, 8th, 9th, 10th); (2) other decisions may be considered only in exceptional circum-

stances (4th, 6th); and (3) other decisions may never be considered (5th, 11th). *See id.*

11. *See, e.g., Sellers,* 28 F.3d at 900; *Reed,* 986 F.2d at 1124–25; *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 350 (11th Cir.1989); *Wood,* 879 F.2d at 588; *Wells v. Walker,* 852 F.2d 368, 371 (8th Cir.1988).

danger doctrine.[12] *Id.* (citing *Bieregu v. Reno,* 59 F.3d 1445, 1459 (3d Cir.1995)).

Despite the Third Circuit Court of Appeals' rulings to the contrary, Wyatt urges this Court to find that precedents from other circuits, prior to Wyatt's arrest, clearly established the state created danger theory.[13] As discussed, *supra,* that Court has expressly refused to decide what weight to give other circuit decisions for purposes of finding clearly established law. However, this Court does not need to decide this issue in this case. This is not a case where the Third Circuit Court of Appeals was silent as to whether a state created danger theory exists. *See Johnson,* 150 F.3d at 286 (finding that only two other circuits had spoken to the issue at hand and that the Third Circuit Court of Appeals was silent). In this case, the Third Circuit Court of Appeals had acknowledged the existence of the state created danger doctrine but was not ambivalent about whether to adopt it. *Mark,* 51 F.3d at 1152. Given this express treatment of the doctrine by the Third Circuit Court of Appeals, this Court declines to give any weight to the establishment of the doctrine as a general matter in foreign circuits.[14] As of April, 1996, the doctrine of state created danger had not been clearly established in the Third Circuit Court of Appeals.

At the next lower level of generality, the state created danger theory was not clearly established in sufficiently analogous circumstances because, as of April 1996, the Third Circuit Court of Appeals had not clearly established that omissions, as op-posed to affirmative acts, could give rise to a state created danger claim.[15] First, the Supreme Court case of *DeShaney* failed to address this aspect of the doctrine. *See DeShaney,* 489 U.S. at 201, 109 S.Ct. 998.

Second, even if the prior Third Circuit Court of Appeals cases of *Mark, D.R.,* and *Brown* had established the doctrine as a general matter, they only clearly established state created danger liability for an affirmative act to create a danger. *See Henderson* at *14 (citing *D.R.,* 972 F.2d at 1374–75 ("[l]iability under the state-created danger theory is predicated upon the states' affirmative acts" and cases applying the theory find that the state "affirmatively acted to create the danger to the victims"); *Brown v. Grabowski,* 922 F.2d at 1116 (officer's failure to act does not subject him to liability)). It was not until December, 1997 that the Third Circuit Court of Appeals first established that an official's omission would give rise to a state-created danger theory of liability. *See Morse,* 132 F.3d at 914–15. It follows, Third Circuit appellate decisions did not clearly establish an omission component of the state created danger doctrine by the time of Wyatt's stop in April 1996.

Third, as of April 1996, the cases from foreign circuits were split as to whether the state created danger doctrine required an affirmative act or an omission. *Compare Reed,* 986 F.2d at 1124–25 (omission is adequate to state claim) *with Gregory,* 974 F.2d at 1010 (affirmative act required to state a claim). Given the split in foreign circuit authority, the law on whether omis-

---

12. In *DiJoseph,* the district court held the state created danger doctrine was clearly established as of 1993. *See DiJoseph,* 953 F.Supp. at 608. No matter how prescient, the vitality of that decision became questionable with the decision in *Mark,* where the Third Circuit Court of Appeals expressly cast doubt on the validity of the theory. *See Henderson* at *14 (citing *DiJoseph,* 953 F.Supp. at 608–09). The decision in *Mark* actually created more confusion over the state of the state created danger theory, meaning that the theory was not clearly established.

13. *See, supra,* note 11.

14. Moreover, the other circuits have adopted a state created danger theory with varying levels of culpability including gross negligence, recklessness, and deliberate or willful indifference. *See* Christine M. Madden, Signs of Danger, 43 Vill.L.Rev. 947, 957.

15. Wyatt claims that Krzysiak injured her by an omission, a failure to take further action to protect herself from driving in an inebriated state or with a suspended license.

sions could support claims for state created danger was not clearly established as of Wyatt's stop in April, 1996.

Finally, at the lowest level of generality, the law was not clearly established that an officer would be liable, under a state created danger theory, by reason of having ordered a person to drive while under the influence of alcohol or having failed to assist an person under the influence of alcohol in getting home safely. As of April 1996, no Supreme Court or Third Circuit appellate case had addressed this issue. Moreover, the cases from foreign circuits were split.[16] Given the discussion in foreign circuit authority, it cannot be said that the law on state created danger as applied to assisting inebriated persons was clearly established at the time of Wyatt's stop in April 1996.

Local police officers cannot be expected to read the tea leaves and recognize the winds of change in a gradually evolving area of law. This type of "ivory tower" legal thought is appropriately left to professors, judges, and lawyers. The whole point of the "clearly established" standard is to relieve local police officers of the burden of conforming their conduct to some amorphous and evolving legal standard. Since the state created danger of substantive due process was not so clearly established at the time of Wyatt's stop, Krzysiak is entitled to qualified immunity as to Count I of the complaint. Therefore, the Court will grant summary judgment on Count I in favor of Krzysiak, in his individual capacity.

## C. Suit Against Krzysiak in Official Capacity

Count I of the complaint also names Officer Krzysiak in his official capacity. Both parties agree that a suit against Officer Krzysiak in his official ca-

pacity is equivalent to a suit against New Castle County. *See Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Both parties further agree that New Castle County may not be sued under § 1983 because there is no proof that the alleged constitutional violation involved a policy or custom. *See Monell v. N.Y. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, the Court also grants summary judgment as to Claim I in favor of Krzysiak, insofar as it alleges that Krzysiak acted in his official capacity.

## D. State Law Claims: Counts II, III, and IV

The Court currently has only supplemental jurisdiction over Wyatt's state law claims in Counts II, III, and IV. *See* 28 U.S.C. § 1367(a). However, the Court grants summary judgment as to the federal claim in Count I. "Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss, without prejudice Counts II, III, and IV of the complaint. The Court declines to reach the merits of the summary judgment motion on these counts.

## V. CONCLUSION

For the foregoing reasons the Court will grant summary judgment in favor of Krzysiak on Count I of the complaint and will dismiss, without prejudice, Counts II, III, and IV of the complaint.

---

**16.** *Compare Sellers,* 28 F.3d at 900 (no liability for failing to help inebriated person get home safely); *Gregory,* 974 F.2d at 1010 (no liability for arresting sober driver and leaving inebriated passenger in car) *with Reed,* 986

F.2d at 1124–25 (liability for arresting sober driver and leaving inebriated passenger in car); *Wood,* 879 F.2d at 588 (liability for abandoning sober passenger in bad neighborhood after arresting drunk driver).